**TWIN MAPLES VETERINARY HOSPITAL, INC. et al., Appellants,**

v.

**CINCINNATI INSURANCE COMPANY, Appellee.**

[Cite as *Twin Maples Veterinary Hosp. v. Cincinnati Ins. Co.*, 159 Ohio App.3d 590, 2005-Ohio-430.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20623.

Decided Feb. 4, 2005.

Ronald J. Kozar, for appellants.

Neil F. Freund and Daniel F. Getty, for appellee.

WOLFF, Judge.

{¶ 1} Twin Maples Veterinary Hospital ("Twin Maples"), Warren Snead, and Craig Clouse appeal from an order of the Montgomery County Court of Common Pleas that denied their motion for partial summary judgment and granted summary judgment to Cincinnati Insurance Company ("CIC").

{¶ 2} The following facts are undisputed.

{¶ 3} Snead and Clouse are veterinarians who are employees and owners of Twin Maples Veterinary Hospital. Twin Maples, Snead, and Clouse were insured under a business owner's policy ("BOP") and a professional umbrella policy with CIC. The BOP included veterinary professional liability coverage and employee benefit liability coverage.

{¶ 4} On May 8, 2001, Kathleen Grant, another veterinarian who was previously an employee and part owner of Twin Maples, brought a suit against Twin Maples, Snead, and Clouse arising out of their business relationship. *Grant v. Snead*, Montgomery C.P. case No. 01–2430. Grant alleged that Snead and Clouse, as majority shareholders and officers of Twin Maples, had attempted to "squeeze [her] out" as a minority shareholder without paying her the agreed value of her common stock in the professional corporation. She further alleged that they had refused to pay her share of the bonus-pool money to her, as required by the Second Option Agreement for Purchase of Shares of Common Stock. Grant brought claims of breach of contract, breach of fiduciary duty, conversion, theft, and civil conspiracy.

{¶ 5} Twin Maples promptly notified CIC of Grant's lawsuit and requested that the insurance company defend against the action. On June 5, 2001, CIC sent Twin Maples a letter, informing it that it had preliminarily decided not to provide a defense. On December 31, 2001, CIC confirmed that it would not defend against Grant's lawsuit. Twin Maples, Snead, and Clouse defended against the action themselves, incurring more than $70,000 in attorney fees and costs.

{¶ 6} On March 18, 2003, Twin Maples, Snead, and Clouse brought suit against CIC, claiming that the company had breached the insurance contract and had acted in bad faith by failing to provide a defense. They subsequently sought summary judgment on the liability portion of their claims, claiming that the Employee Benefit Endorsement obligated CIC to defend against the bonus-pool claim. CIC opposed the motion and filed a cross-motion for summary judgment. CIC argued that Grant's entitlement to the bonus pool did not arise through her employment relationship with Twin Valley and therefore it was not an employee benefit. CIC further asserted that "the entirety of Ms. Grant's allegations and the conduct giving rise thereto are acts not covered under the policy" because (1) the policy language covers only negligent acts of the insureds and (2) the policy

expressly excluded claims arising from dishonest, fraudulent, criminal, or malicious acts by the insured. On July 9, 2004, the trial court sustained CIC's summary judgment motion and overruled the motion of Twin Maples, Snead, and Clouse.

{¶ 7} Twin Maples, Snead, and Clouse raise two assignments of error on appeal.

{¶ 8} "1. The trial court's July 9, 2004 decision granting the defendant's motion for summary judgment was error."

{¶ 9} "2. The trial court's July 9, 2004 decision denying the plaintiffs' motion for partial summary judgment was error."

{¶ 10} Our review of the trial court's decision to grant summary judgment is de novo. See *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 11} "An insurance policy is a contract in which the insurer promises to indemnify the insured for losses incurred by the insured which arise out of the occurrence of a risk identified in the policy." *GuideOne Mut. Ins. Co. v. Reno,* Greene App. No. 01–CA–68, 2002-Ohio-2057, 2002 WL 857682, affirmed sub nom. *Cincinnati Ins. Co. v. Anders,* 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094. The insurer's promise to indemnify is separate and distinct from its obligation to defend an insured in an action, and the duties are triggered by different events. Id. "The duty to indemnify is triggered by the insured's actual legal liability. The duty to defend is a prior duty that's triggered by the insured's demand that the insurer provide a defense to a claim of alleged liability." Id.

{¶ 12} A liability insurer's obligation to its insured arises only if the claim falls within the scope of coverage. *Cincinnati Indemn. Co. v. Martin* (1999), 85 Ohio St.3d 604, 605, 710 N.E.2d 677. An insurer has a duty to defend the insured "[w]here the allegations state a claim that falls either potentially or arguably within the liability insurance coverage." *Anders,* 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094, at ¶ 18. Conversely, "[t]he insurer need not provide a defense if there is no set of facts alleged in the complaint which, if

proven true, would invoke coverage." *Martin,* 85 Ohio St.3d at 605, 710 N.E.2d 677. Where the action alleged claims that fell within the insurance coverage yet the conduct that prompted the action "is so indisputably outside coverage," the insurer has no duty to defend, so long as the insurance policy only required the insurer to defend against claims to which the coverage applied. *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118. The duty to defend need not arise solely from the allegations in the complaint but may arise at a point subsequent to the filing of the complaint. *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555.

{¶ 13} The employee-benefit liability coverage endorsement at issue provides:

{¶ 14} "We will pay those sums that the insured becomes legally obligated to pay as damages because of injury to: (1) An 'employee'; or (2) A person who was formerly employee by you; * * * caused by any negligent act, error or omission committed by an insured or any other person for whose acts the insured is legally liable, arising out of the 'administration' of the insured's 'employee benefit programs. * * *

{¶ 15} "We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for injury to which this insurance does not apply."

{¶ 16} The endorsement excludes, among other things, any claim arising out of "[a]cts, errors or omissions of any insured that are dishonest, fraudulent, criminal or malicious."

{¶ 17} In granting summary judgment to CIC, the trial court reasoned:

{¶ 18} "In this instance, the insurance agreement specifically states that CIC will not defend claims based on fraudulent or malicious acts. Thus, the four counts specifically based on malicious conduct are excluded from coverage. This is true whether or not the Court considers the fraud language in the general allegations preceding the individual counts.

{¶ 19} "As to Grant's breach of contract claims, CIC did not have a duty to defend since the underlying allegations were based on fraud. Where a party claims an insurer had a duty to defend a particular cause of action, the Court must consider the underlying fact allegations. Where such allegations are specifically prohibited under the terms of the insurance agreement, the insurer does not have a duty to defend. In this instance, the breach of contract claims arise from Grant's allegation of fraudulent conduct. The agreement prohibition against defense of fraud claims negates any duty of CIC to defendant Plaintiffs against Grant's claims.

{¶ 20} "Finally, the 'Umbrella Policy' referenced by Plaintiffs does not provide for an additional duty to defend. The policy clearly only provides coverage sums 'in excess of the underlying insurance.' This Court determined above that the underlying insurance does not provide for a duty to defend Plaintiffs under these facts. Therefore, the 'Umbrella Policy' necessarily excludes from coverage such a duty to defend." (Citations omitted.)

{¶ 21} On appeal, Twin Maples argues that the trial court erred in finding no duty to defend because Grant's claims regarding the bonus pool fell within the coverage provided by the Employee Benefit Endorsement and no exclusion applied. Specifically, Twin Maples claims that only the conspiracy claim required proof of fraud or malice, and Grant could have prevailed on her other legal theories without such proof. Twin Maples asserts that Grant's allegations that Clouse and Snead had acted fraudulently and maliciously were gratuitous and should not have been dispositive of CIC's duty to defend.

{¶ 22} We first address the extent of the policy's coverage. The often-repeated rules of interpretation for insurance contracts should, by now, be familiar. "A court must give undefined words used in an insurance contract their plain and ordinary meaning." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. Nevertheless, "[i]f a term is clear and unambiguous [a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Santana v. Auto Owners Ins. Co.* (1993), 91 Ohio App.3d 490, 494, 632 N.E.2d 1308; see, also, *Cincinnati Ins. Co. v. Am. Line Bldrs. Apprenticeship Training Program* (1994), 93 Ohio App.3d 392, 395, 638 N.E.2d 1047.

{¶ 23} Upon review of the policy, we agree with CIC that the employee-benefit liability coverage endorsement covers only negligent conduct. Although Twin Maples claims that negligence could modify only "act" and not "error or omission," we find no ambiguity. Other portions of policy refer to "acts, errors or omissions" as a unit. For example, the exclusions portion of the endorsement states that coverage does not exist for "acts, errors or omissions of any insured that are dishonest, fraudulent, criminal or malicious." Likewise, the animal-services professional liability coverage endorsement excludes "[a]cts, errors or omissions of any insured that are dishonest, criminal or malicious." We see no logical basis to interpret the endorsement as covering intentional errors and omissions yet not covering intentional *acts*. Rather, in our judgment, the employer-benefit liability coverage endorsement clearly and unambiguously cov-

ers only any "act, error, or omission" that is negligent. Parenthetically, we note that Grant's complaint alleges only wrongful acts by Clouse and Snead, not errors or omissions.

{¶ 24} We agree with Twin Maples that several of Grant's asserted causes of action do not require a particular mental state, including an intent to defraud or malice. It is well established that the breaching party's mental state is irrelevant to a claim for breach of contract. E.g., *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.* (1996), 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 ("The motive of a breaching party is irrelevant to a contract action"). Likewise, a claim for breach of fiduciary duty can be based upon negligent, reckless, or intentional conduct. *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 ("A claim of breach of a fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care. And in negligence actions, we have long held that ' "one seeking recovery must show the existence of a duty on the part of the one sued not to subject the former to the injury complained of, a failure to observe such duty, and an injury resulting proximately therefrom," ' " quoting *Baier v. Cleveland Ry. Co.* (1937), 132 Ohio St. 388, 391, 8 O.O. 208, 8 N.E.2d 1).

{¶ 25} However, the fact that several of Grant's claims could be established with negligent conduct—or without any mental state at all—is not dispositive of CIC's duty to defend. The nature of the claims in the complaint cannot be divorced from the factual allegations upon which those claims are based. Although *Gill* presents a more extreme example, it is instructive that where the factual bases of the claims clearly do not support a cause of action within the scope of the policy's coverage and the insurer is not required to defend against "groundless, false or fraudulent claims," the insurer need not defend.

{¶ 26} That is the case herein. In her complaint, Grant alleges that Snead and Clouse "as the majority, controlling and dominant shareholders, directors and officers of TMVHI, and in disregard of their duties and functions as such * * * have unlawfully, fraudulently and improperly withheld payment to Dr. Grant to share in the annual bonus pool in an amount yet to be determined but anticipated to presently be not less than One Hundred Eight Thousand Six Hundred Dollars ($108,600.00) pursuant to the Second Option Agreement for Purchase of Shares of Common Stock." She further alleges that they "unlawfully, fraudulently and improperly conspired and colluded among themselves to thieve and convert Dr. Grant's share of the bonus pool money * * * to their own uses and benefits." Grant describes their actions as an attempt to "squeeze [her] out" as a minority shareholder without paying her the agreed value of her common stock and any of the bonus pool money. We are hard-pressed to find an interpretation of these facts that would support mere negligence on the part of Snead, Clouse, and Twin

Maples. To the contrary, the factual allegations state that Snead and Clouse acted intentionally in denying her the bonus-pool money and in failing to pay her the agreed value for her stock. Accordingly, even though Grant has stated causes of action that could be supported by negligent behavior, she did not rely upon any negligent conduct as a basis for those claims. Compare *Westfield Cos. v. O.K.L. Can Line,* 155 Ohio App.3d 747, 2003-Ohio-7151, 804 N.E.2d 45, in which the complaint had alleged unintentional infringement as well as intentional infringement; see *Monsler v. Cincinnati Cas. Co.* (1991), 74 Ohio App.3d 321, 598 N.E.2d 1203. Thus, Grant's claims did not fall within the endorsement's coverage provision. Because Grant did not allege negligence on the part of Twin Maples, Clouse, and Snead, we need not address whether the bonus pool at issue is covered by the policy or whether the trial court properly determined that the exclusion applied.

{¶ 27} The assignments of error are overruled.

{¶ 28} The judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN, P.J., and FAIN, J., concur.