OPINION *Page 2 
{¶ 1} Joseph Siefke, Jr. and Deborah Seifke ("the Siefkes") appeal from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment to Universal Underwriters Insurance Company ("UUIC") and denied the Siefkes' cross-motion for summary judgment. For the following reasons, the judgment of the trial court will be affirmed.
 I {¶ 2} This action stems from an automobile accident which caused extensive injuries to Joseph Siefke. On July 24, 2004, Seth Bond collided with Siefke as Siefke was driving a 2003 Chevy Silverado at State Route 49 and Union Road in Montgomery County. Bond was insured by an automobile insurance policy with Grange Insurance Company with a liability limit of $100,000 per person and $300,000 per accident. Siefke had an automobile insurance policy with State Farm Mutual Automobile Insurance Company, which included uninsured and underinsured motorist ("UM/UIM") coverage. The policy limits of the State Farm policy were the same as Bond's policy with Grange. The Siefkes also had a policy with UUIC, which included primary insurance for their business, commercial umbrella coverage and personal umbrella coverage.
 {¶ 3} On July 20, 2006, the Siefkes brought suit against Bond, State Farm, and UUIC, asserting claims of negligence, loss of consortium, and underinsured motorist coverage. With regard to UUIC, the Siefkes claimed that they were entitled to underinsured motorist coverage under the UUIC policy as a matter of law. Siefke collected $100,000 from Grange and Bond, and Bond was dismissed from the litigation. Subsequently, State Farm was also dismissed from the action. *Page 3 
 {¶ 4} In December 2006, UUIC moved for summary judgment on the Siefkes' claim against it, asserting that the Siefkes were not entitled to underinsured motorist coverage under the commercial umbrella portion of the UUIC policy (Part 980). UUIC argued that underinsured motorist coverage did not arise by operation of law under the relevant version of R.C. 3937.18 and that Part 980 expressly excluded underinsured motorist coverage. UUIC attached the declaration pages and Part 980 of the policy.
 {¶ 5} The Siefkes opposed UUIC's motion and filed a cross-motion for partial summary judgment. In their memorandum, the Siefkes initially agreed with UUIC that "R.C. 3937.18, as re-written by S.B. 97, effective on October 31, 2001, does not require that an insurer issuing an automobile liability or motor vehicle liability policy in Ohio offer UM/UIM with the policy * * *." They stated, however, that R.C. 3937.18 was irrelevant because they were not arguing that UM/UIM coverage arose by operation of law.
 {¶ 6} The Siefkes claimed that they were entitled to underinsured motorist coverage under Part 970, the personal umbrella portion, because the State Farm policy was identified as an underlying insurance policy. They further argued that the exclusion noted by UUIC had been replaced by language in the Ohio Amendatory Part, and that the Ohio Amendatory Part removed the exclusion for UM/UIM coverage. The Siefkes indicated that UUIC incorrectly based its arguments on Part 980 rather than Part 970. The Siefkes commented that this "error is significant but not crucial as to the exclusion since part 970 contains the same exclusion." Finally, the Siefkes argued that the purpose of the UUIC personal umbrella policy was to provide "excess coverage for the risks contained in the underlying policy." *Page 4 
 {¶ 7} James R. Giesenfeld, one of the Siefkes' attorneys, filed an affidavit authenticating a complete copy of the UUIC policy and a certificate of coverage from State Farm.
 {¶ 8} In its memorandum in response to the Siefkes' cross-motion and in support of its motion for summary judgment, UUIC acknowledged that the Ohio Amendatory Part altered the exclusion provisions of Parts 970 and 980. However, it asserted that the policy did not provide coverage, a threshold issue. UUIC noted that Parts 970 and 980 both provide coverage for a "loss," which was defined in those Parts as "all sums the INSURED legally must pay as DAMAGES because of INJURY * * *." UUIC argued that, because the policy only protected Siefke from having to pay damages, Part 970 and Part 980 did not apply. UUIC further noted that Part 530, which provided UM/UIM coverage to identified insureds, was not included in the UUIC policy. Finally, UUIC claimed that R.C. 3937.18 was relevant, in that UUIC was not required by statute to offer UM/UIM coverage.
 {¶ 9} In their reply memorandum, the Siefkes argued that Part 530 was relevant to a primary commercial automobile insurance policy, not to an umbrella policy. They further took issue with UUIC's "newly-raised" argument that the umbrella policy was limited to "loss," as defined by Part 970.
 {¶ 10} The trial court initially overruled both motions for summary judgment, indicating that the copies of the policies attached to the motions for summary judgment did not satisfy the requirements of Civ. R. 56. The trial court subsequently reconsidered its ruling after the parties stipulated to a copy of the UUIC insurance policy. *Page 5 
 {¶ 11} On reconsideration, the trial court granted UUIC's motion for summary judgment and denied the Siefkes' cross-motion for summary judgment. The Siefkes appeal from the trial court's judgment.
 II {¶ 12} Civ. R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See State ex rel. Grady v. State Emp.Relations Bd., 78 Ohio St.3d 181, 183, 1997-Ohio-221, 677 N.E.2d 343;Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66,375 N.E.2d 46. Our review of the trial court's decision to grant summary judgment is de novo. See Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162, 703 N.E.2d 841.
 {¶ 13} In reviewing the terms of the UUIC insurance policy, this Court "must give undefined words used in an insurance contract their plain and ordinary meaning." Nationwide Mut. Fire Ins. Co. v. Guman Bros.Farm (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. Nevertheless, "[i]f a term is clear and unambiguous [a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Santana v. Auto Owners *Page 6 Ins. Co. (1993), 91 Ohio App.3d 490, 494, 632 N.E.2d 1308; see, also,Twin Maples Veterinary Hosp. v. Cincinnati Ins. Co.,159 Ohio App.3d 590, 2005-Ohio-430, 824 N.E.2d 1027, at ¶ 22.
 III {¶ 14} The Siefkes' sole assignment of error reads:
 {¶ 15} "THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN GRANTING THE MOTION OF UNIVERSAL UNDERWRITERS INSURANCE COMPANY (`UUIC') FOR SUMMARY JUDGMENT AND DENYING THE MOTION OF PLAINTIFFS-APPELLANTS FOR PARTIAL SUMMARY JUDGMENT THAT THEIR UUIC UNICOVER POLICY, PART 970, PERSONAL UMBRELLA, PROVIDES THEM EXCESS COVERAGE OVER THE INSURANCE PAYMENT OF THE UNDERINSURED MOTORIST WHO CAUSED PERSONAL INJURIES TO INSURED, JOSEPH SEIFKE, JR., AND LOSS OF CONSORTIUM TO DEBORAH SIEFKE."
 {¶ 16} As stated above, the UUIC policy has several components. According to the declarations, the policy provides primary insurance coverage for the Siefkes' corporation, Siefke, Inc., dba Muffler Brothers. Also included were a commercial umbrella policy for Muffler Brothers (Part 980) and a personal umbrella policy for Joseph Siefke (Part 970).
 {¶ 17} The declarations pages indicated a policy limit of $1 million per occurrence under Part 970. There were two underlying policies for Part 970: a homeowners' policy with State Farm and an automobile policy with State Farm.
 {¶ 18} Part 970 set forth its coverage as follows:
 {¶ 19} "INSURING AGREEMENT — WE will pay for LOSS, subject to the terms *Page 7 
and conditions of this Coverage Part, in excess of:
 {¶ 20} "(a) coverage provided in any UNDERLYING INSURANCE;
 {¶ 21} "(b) coverage provided to an INSURED in any other insurance;
 {¶ 22} "(c) in the absence of (a) or (b) the retention shown in the declarations.
 {¶ 23} "* * *
 {¶ 24} "DEFINITIONS — When used in this Coverage Part: * * *
 {¶ 25} "`LOSS' means all sums the INSURED legally must pay as DAMAGES because of INJURY to which this insurance applies caused by an OCCURRENCE. LOSS also means all sums the INSURED must pay as COVERED POLLUTION DAMAGES to which this insurance applies caused by an OCCURRENCE.
 {¶ 26} "* * *
 {¶ 27} "EXCLUSIONS — This insurance does not apply to: * * *
 {¶ 28} "(n) any INJURY recoverable under automobile no-fault or personal injury protection, Uninsured Motorist or Underinsured Motorist Coverages;
 {¶ 29} "(o) INJURY to any INSURED, except as covered by UNDERLYING INSURANCE[.]"
 {¶ 30} The Ohio Amendatory Part modified exclusion (n) stated in Part 970 by removing the reference to UM/UIM insurance. It now states:
 {¶ 31} "(n) any INJURY recoverable under automobile no-fault or personal injury protection."
 {¶ 32} In all relevant respects, the coverage provided in Part 980 is identical to that in Part 970. Part 980, however, does not contain an exclusion similar to exclusion (o). *Page 8 
 {¶ 33} UUIC offered UM/UIM coverage in Part 530, which applied "when it is shown in the declarations." The Siefkes' UUIC policy does not include Part 530 in the declarations.
 {¶ 34} In ruling on the summary judgment motions, the court began by stating that R.C. 3937.18 was important to this case. It noted that, in accordance with Senate Bill 97, UUIC did not "couple UM/UIM coverage with Parts 970 980. Yet, [UUIC] did elect to offer additional coverage under Part 530, although not required to do so." Turning to the Siefkes' motion, the court concluded that the Siefkes were not covered under either Part 970 or 980 because those provisions covered only "instances in which the Plaintiffs would have to pay another person, not themselves." Because the Siefkes did not elect coverage under Part 530, they did not have underinsured motorist coverage under the contract. The court thus denied the Siefkes' motion and, upon construing the facts in the light most favorable to the Siefkes, it granted summary judgment to UUIC.
 {¶ 35} On appeal, the Siefkes set forth several arguments why the UUIC policy provides underinsured motorist coverage. First, they claim that Part 970 and Part 980 are significantly different, because the declarations page expressly states that the commercial umbrella policy (Part 980) does not provide excess insurance for UM/UIM coverage (Part 530). Along with this argument, the Siefkes assert that the Ohio Amendatory Part removed the exclusion for UM/UIM coverage from Part 970. The Siefkes contend that they had UM/UIM coverage under their State Farm automobile insurance policy, and thus Part 970 provided excess coverage for that underlying UM/UIM insurance. *Page 9 
 {¶ 36} Next, the Siefkes argue that the trial court erroneously considered UUIC's argument that the definition of the word "loss" in Parts 970 and 980 precluded coverage. The Siefkes argue that the trial court interpreted "loss" narrowly when it accepted UUIC's argument and that it failed to consider more specific language in the policy. The Siefkes also claim that they did not have an opportunity to respond to UUIC's argument.
 {¶ 37} The Siefkes further argue that the trial court erred in considering that the Siefkes had not elected UM/UIM coverage under Part 530. They claim that Part 530 provided primary insurance, not umbrella coverage.
 {¶ 38} Finally, the Siefkes contend that UUIC's arguments (and the trial court's conclusion) are contrary to the nature of an umbrella policy. In light of the Siefkes' arguments, we begin with a brief description of the difference between primary and excess coverage.
 {¶ 39} "Primary insurance provides an initial layer of protection against liability or loss and its premiums are commensurate with the high degree of risk that the insurance covers. `Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. A second insurer thus greatly reduces his risk of loss. This reduced risk is reflected in the cost of the policy.'
 {¶ 40} "In providing excess coverage, an insurance company may offer `umbrella policies' which differ from standard excess insurance policies in that they are designed to fill gaps in coverage both vertically (by providing excess coverage) and horizontally (by providing primary coverage). The vertical coverage provides additional *Page 10 
coverage above the limits of the insured's underlying primary insurance, whereas the horizontal coverage is said to `drop down' to provide primary coverage for situations where the underlying insurance provides no coverage at all. As succinctly stated by the Eleventh Circuit in Garmany v. Mission Insurance Co., 785 F.2d 941, 948 (11th Cir. 1986), `umbrella policies have two functions: 1) to provide for a higher limit of liability for those losses typically covered by liability insurance-general liability . . .; [and] 2) to provide for some coverage of those less common losses not typically covered by liability insurance — e.g., malpractice liability, advertiser's liability, blanket contractual liability, world-wide operations liability, etc.'" (Internal citations omitted.) American Special RiskIns. Co. v. A-Best Products, Inc. (N.D. Ohio,1997), 975 F.Supp. 1019,1022.
 {¶ 41} The Siefkes assert that UUIC's arguments are contrary to the nature of umbrella policies because, under UUIC's interpretation of the policy, the Siefkes' State Farm policy would provide coverage that the UUIC policy — an umbrella policy — does not. Our ability to address this argument is hampered somewhat by the parties' failure to provide the underlying State Farm policies as evidence. Nevertheless, Part 970 appears to provide both excess and primary coverage.
 {¶ 42} In the portion of Part 970 labeled "Insuring Agreement," UUIC agreed to provide coverage for losses in excess of the coverage provided in the underlying State Farm policies. In the absence of coverage under the underlying policies or any other insurance, UUIC also agreed to provide coverage for losses in excess of the retention amount shown on the declarations page. In other words, UUIC agreed to provide primary insurance coverage for losses caused by "injury" otherwise not covered by the *Page 11 
underlying policy or another policy. Under Part 970, "injury" includes various things, including bodily injury, mental anguish, defamation, invasion of privacy, and discrimination. Thus, the UUIC policy provides primary insurance for certain liabilities and excess liability coverage for others. Even assuming that Part 970 does not include excess UM/UIM coverage, Part 970 of the UUIC policy is not contrary to the nature of an umbrella policy.
 {¶ 43} Upon review of the UUIC policy as a whole, we agree with the trial court that the policy unambiguously fails to include underinsured motorist coverage for Joseph Siefke. Because of the definition of "loss" contained in Part 970, that Part provides additional insurance to Siefke, the insured, when he is obligated to pay damages to another person. Nothing in Part 970 indicates that the policy provides coverage when Siefke has incurred damages due to the acts of another. As noted by the trial court, the same language in Part 980 also indicates that Muffler Brothers does not have underinsured motorist coverage under that Part.
 {¶ 44} The Seifkes claim that the trial court should not have relied upon the definition of "loss" on the ground that they had no opportunity to respond to UUIC's argument. The record reflects otherwise. UUIC first asserted that Part 970 and Part 980 insured only against "loss" in its memorandum in opposition to the Siefkes' cross-motion for summary judgment and reply memorandum in support of its motion for summary judgment. The Siefkes responded to UUIC's argument in its reply memorandum in support of their cross-motion for summary judgment. The Siefkes had an ample opportunity to respond to UUIC's argument, and the trial court did not err in granting summary judgment to UUIC on that basis. *Page 12 
 {¶ 45} The Siefkes further argue that this interpretation of Part 970 ignores "other, more specific language" of the policy. They cite to: (1) the promise to provide coverage over the underlying automobile insurance; (2) the fact that the Declarations for the Personal Umbrella did not mention it not covering UM/UIM while clearly so stating in the Declarations for the Commercial Umbrella; (3) the specific deletion of UM/UIM from the standard exclusion (n) in the Ohio Amendatory Part; (4) the specific language in exclusion (o) of the Personal Umbrella that injuries to an insured that were within the underlying insurance were not excluded; and (5) the difference in the insureds for the Personal Umbrella as individuals and the Commercial, being that business entity. In our view, none of these provisions create any question of fact as to whether Part 970 includes UM/UIM coverage.
 {¶ 46} First, Part 970 does not provide unconditional excess coverage for the underlying automobile insurance. Rather, UUIC agreed to pay for "LOSS * * * in excess of * * * coverage provided in the any UNDERLYING INSURANCE[.]" As quoted above, "loss" is limited to sums that Siefkemust pay as damages because of "injury." In other words, UUIC agreed to provide excess liability coverage.
 {¶ 47} Next, the various changes to the exclusion provisions do not create UM/UIM coverage where none has been provided. Although Part 980 expressly excludes Part 530 as an underlying policy and denies UM/UIM coverage whereas Part 970 does not, the exclusions are irrelevant if UM/UIM is not covered under the "Insuring Agreement" of Part 970. Moreover, as noted by the trial court, several of the changes in the exclusions are readily explained by the 2001 amendments to R.C. 3937.18, which eliminated UM/UIM insurance by operation of law. Prior to Senate Bill *Page 13 
97, UM/UIM coverage would have existed in an umbrella policy, by operation of law, where the underlying automobile policy was required to provide UM/UIM coverage. R.C. 3937.18(L); see Jump v. Nationwide Mut.Ins. Co., Montgomery App. No. 18880, 2001-Ohio-1699.
 {¶ 48} Exclusion (o), cited by the Siefkes, appears to refer to situations where one insured's conduct causes injuries to another insured, such as where there is a negligent insured-driver and an injured insured-passenger. Exclusion (o) would exclude coverage for the insured-driver's liability, except where the underlying policy includes coverage for that situation. We find no basis to construe exclusion (o) as permitting UM/UIM coverage.
 {¶ 49} In addition, we find no merit to the Siefkes' assertion that the difference in insureds between Parts 970 and 980 supports a conclusion that UM/UIM existed in Part 970.
 {¶ 50} Finally, the Siefkes claim that the trial court erred in considering Part 530 in concluding that the Siefkes could have selected UM/UIM but did not. We agree with the Siefkes in this respect. Part 530 provides that UUIC "will pay all sums the INSURED is legally entitled to recover as compensatory DAMAGES from the owner or driver of an UNINSURED MOTOR VEHICLE. * * *" Reading Part 530 in its entirety, Part 530 provides primary UM/UIM coverage, not excess coverage. Whether the Siefkes failed to select UM/UIM coverage under Part 530 has no bearing on whether UUIC agreed to provide excess UM/UIM coverage under Part 970. (However, we agree with the trial court that, because the Siefkes failed to select coverage under Part 530, they could not claim UM/UIM coverage under Part 530.) Regardless, because UM/UIM *Page 14 
coverage was not included in Part 970, the Siefkes cannot claim UM/UIM coverage under the UUIC policy.
 {¶ 51} In short, we agree with the trial court's conclusion that Parts 970 and 980 provide excess liability coverage and not UM/UIM coverage. Moreover, because the Siefkes did not take advantage of UM/UIM coverage under Part 530, that portion of the UUIC policy also does not provide UM/UIM coverage.
 {¶ 52} The assignment of error is overruled.
 III {¶ 53} The judgment of the trial court will be affirmed.
 BROGAN, J. and FAIN, J., concur. *Page 1