[Cite as *Wright State Physicians, Inc. v. Doctors Co.*, 2016-Ohio-8367.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| WRIGHT STATE PHYSICIANS, INC., et. al. | : | Appellate Case No. 27084 |
| | : | |
| Plaintiffs-Appellants | : | Trial Court Case No. 14-CV-5685 |
| | : | |
| v. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| THE DOCTORS COMPANY, AN INTERINSURANCE EXCHANGE | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of December, 2016.

. . . . . . . . . . .

JONATHAN HOLLINGSWORTH, Atty. Reg. No. 0022976, Hollingsworth & Washington, L.L.C., 6494 Centerville Business Parkway, Centerville, Ohio 45459
        Attorney for Plaintiffs-Appellants

SABRINA HAURIN, Atty. Reg. No. 0079321, and MICHAEL GOODSTEIN, Atty. Reg. No. 0080476, Bailey Cavalieri L.L.C., One Columbus, 10 West Broad Street, Suite 2100, Columbus, Ohio 43215-3422
        Attorneys for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1} Wright State Physicians, Inc. and Daniel J. Lacey, M.D. appeal the trial court's entry of summary judgment for The Doctors Company on their claims for breach of contract and bad faith. Finding no error, we affirm.

## I. Background

{¶ 2} Wright State Physicians (WSP) is a medical practice group through which physicians employed by the Boonshoft School of Medicine at Wright State University provide medical services at various local hospitals while teaching and supervising medical students, interns, and resident physicians. Daniel Lacey is a neurologist with WSP and provided medical services at the Children's Medical Center of Dayton (CMC) (now called Dayton Children's Hospital).

{¶ 3} The Doctors Company (TDC) is an interinsurance exchange that provides medical-malpractice insurance. TDC had separately issued medical-malpractice policies to CMC and WSP. Dr. Lacey was covered under WSP's policy. The WSP policy was a claims-made policy in effect from April 15, 2009, until April 15, 2010. A claims-made policy (as opposed to an occurrence-based policy) typically covers only those claims that are first reported to the insurer while the policy is in effect.

{¶ 4} On December 28, 2009, an attorney representing a minor child and his parents sent a letter of assertion to Dr. Lacey at CMC claiming that Dr. Lacey negligently treated the child at CMC in 2003. The attorney also sent a separate letter of assertion to CMC similarly claiming that the care that its employees provided was negligent. In January 2010, CMC forwarded a copy of the Lacey letter to WSP. The President and CEO of WSP at the time acknowledged that it needed to notify TDC of the Lacey letter and that it needed to submit an incident or claims form.

{¶ 5} In February 2010, CMC filed a claims form with TDC and forwarded it with the letter from the child's attorney as well as other information that it had about its treatment of the minor child. CMC told the TDC litigation specialist assigned to the claim

that the child's attorney had said that Dr. Lacey was the primary actor and that Lacey was also insured by TDC. After talking with CMC, the litigation specialist wrote in his notes that Dr. Lacey was employed by WSP and that he was "a TDC insured." The specialist also referred to Lacey as "the anticipated codefendant."

{¶ 6} In September 2011, the child and his parents filed a medical-malpractice suit against CMC, WSP, and Dr. Lacey. Both CMC and WSP (for itself and Dr. Lacey) tendered their defenses of the suit to TDC under their respective insurance policies. TDC accepted CMC's tender but refused to provide a defense for WSP and Dr. Lacey, because neither WSP or Lacey had ever notified it of the claim, which their policy requires. The malpractice suit was settled in December 2014.

{¶ 7} In October 2014, after TDC again refused their tender, WSP and Dr. Lacey filed the present action against TDC, claiming breach of contract and bad faith and asking for a declaratory judgment. WSP and Lacey allege that TDC was obligated under the insurance policy to provide coverage and that by failing to do so TDC breached the policy and acted in bad faith. TDC maintains that it was not obligated to provide coverage and did not act in bad faith because WSP and Dr. Lacey failed to satisfy the policy's notice requirements. The parties filed cross-motions for summary judgment, and the trial court sustained TDC's motion and overruled WSP's and Dr. Lacey's motion.

{¶ 8} WSP and Lacey appealed.

## II. Analysis

{¶ 9} WSP presents two assignments of error, both challenging the trial court's grant of summary judgment. The first argues that the trial court erred by granting summary judgment on the breach-of-contract claim. And the second argues that the court erred by

granting summary judgment on the bad-faith claim.

{¶ 10} Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). Further, "summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *Id.*

### A. Breach of contract

{¶ 11} The subject policy is a claims-made policy. According to the notice on the policy's cover page, this means that "the coverage of this policy is limited generally to liability for only those claims that are first reported in writing to the Company while the policy is in force." The policy also states that a claim is covered "only if and when" the claim arises from an incident that took place "prior to the termination date of this Policy" and "**we** receive a *Claim Report* from **you** during this *Policy Period*." (Emphasis sic.) (Section III). In the policy, the words "we," "us," and "our" refer to TDC and "you" and "your" refer to each applicable "Protected Party." "Claim" is defined as "a demand for payment of damages or for services arising from" a covered incident. (Section VII, ¶ a). And a "Probable Claim Event" is an incident that a Protected Party "knew or believed, or by diligent inquiry had, or would have had, a reasonable basis to know or believe, may give rise to a *Claim*." (Emphasis sic.) (Section VII, ¶ k). A "Claim Report" is

**your** written communication received at **our** offices that notifies **us** of:

    1. **your** receipt of a *Claim*; or

    2. **your** awareness of a *Probable Claim Event*, and for which **you**

provide all of the information described in General Rules, f.2.

(Emphasis sic.) (Section VII, ¶ b).

**{¶ 12}** The "General Rules" impose duties on each Protected Party, including duties that are triggered if a "Claim" is made against a Protected Party or a "Probable Claim Event" occurs. One of those duties is to "[i]mmediately notify **us** in writing and forward to **us** every demand, notice of intent to sue, *Suit*, or other document **you** or **your** representative receives relating to the *Claim* or *Probable Claim Event*." (Emphasis sic.) (Section VIII, ¶ f). The consequence of materially failing to comply with this duty is the potential loss of coverage for the claim. (Section VIII) ("If any Protected Party materially fails to comply with his, her, or its obligations under the Policy, our obligations to such Protected Party will terminate."); (Section VI, ¶ v) (stating that TDC has no duty to defend against or indemnify "Liability for any *Claim* otherwise covered by this Policy if you fail to comply with any of your duties described in General Rules, f. Your Duties in the Event of a *Claim* or *Probable Claim Event*").

**{¶ 13}** There is no dispute that the minor's underlying claim would otherwise be a covered claim and that the only reason that TDC refused coverage is because WSP failed to satisfy the policy's notice requirements. And it is also undisputed that WSP did not comply with the notice requirements as written in the policy. WSP did not give TDC notice of the potential claim against it until it tendered defense of the malpractice suit, which was well after the policy expired. WSP concedes all this. But it argues that the evidence shows

that, before the policy expired, TDC had actual notice of the minor's claim against WSP and Lacey courtesy of CMC communication and that this actual notice was sufficient to satisfy the policy's notice requirements.

{¶ 14} CMC's coverage was under a separate TDC medical-malpractice policy. On February 17, 2010, Susan Childs, CMC's Director of Risk Management, sent a reporting form about the minor's claimed incident to CMC's insurance agent. Childs attached the letter of assertion from the minor's attorney and noted in her letter to the agent that the attorney told her that "the physician—a neurologist who is NOT our insured, was [the] main person of interest." On February 18, the insurance agent sent an email to TDC claims specialist Dan Litman about the minor's claim against CMC. Litman also handled claims made against WSP. The email included the reporting form and the February 17 letter from Childs. On February 19, TDC's regional vice president Nancy Libke made a file note about the claim stating that "Claimant attorney will need to identify all individual healthcare providers if a lawsuit is filed for their independent negligence. If any voluntary settlement would be considered by the named insured, all potentially culpable parties (ER physicians, etc.) would be required to participate in settlement before reaching the umbrella coverage." She assigned the claim to litigation specialist Eric Schneider.

{¶ 15} Childs also sent a letter to CMC's attorney on February 17. This letter notes that the minor's attorney told her that the "physician is [the] primary actor." The letter states that Dr. Lacey was working at WSP and is insured by TDC. Childs attached to the letter the letters of assertion to both CMC and Lacey. On February 23, Childs sent Schneider the letter of assertion to CMC and the February 17 letter that she had written to CMC's attorney.

{¶ 16} On March 16, Schneider interviewed Childs by telephone. In his notes of the interview, Schneider mentioned Lacey and WSP. On page one, he wrote that "Dr. Lacey was the pediatric neurologist and he was consulted on this date. He is employed by Wright State Physician Group. He is a TDC insured." On page 3 of his notes, Schneider recorded the allegations against Lacey and CMC:

Dr. Lacey: The plaintiff alleges inadequate testing and lack of adequate follow up.

CMC: The nurses failed to perform adequate follow up after the initial treatment and failed to advise the physician of changes in the child's status between the time of the physician's last examination and discharge.

Finally, under the section titled "Investigator's Opinion of Liability," Schneider wrote: "In relation to the anticipated codefendant, Dr. Lacey, Neurologist, it is unknown why a CT scan or MRI was not obtained."

{¶ 17} Given this evidence, says WSP, it cannot be disputed that TDC had actual notice of the malpractice claim against WSP and Dr. Lacey. And actual notice of the claim, argues WSP, should satisfy the policy's notice requirements. WSP says that no Ohio court has considered the effect of an insurer's actual notice of a claim against its insured during the policy period. Consequently WSP looks to Illinois law, beginning with *Cincinnati Cos. v. West Am. Ins. Co.*, 183 Ill.2d 317, 701 N.E.2d 499 (1998). This case arose from an underlying personal-injury suit, which had been filed in 1989, with two relevant defendants. One was insured by Cincinnati, the other was insured by West. Each insurance company defended their respective insured. Therefore, both Cincinnati and West had actual notice of the underlying suit shortly after it was filed. Just before trial in

January 1992, Cincinnati learned that its defendant was also listed as an additional insured on the West policy. The defense was then tendered to West, which rejected it. Within a few weeks, the case was settled with both Cincinnati and West paying one-half. Cincinnati then filed a declaratory-judgment action against West, seeking a declaration that West was the primary insurer of both defendants and that West was therefore liable for the amount that Cincinnati had paid to settle the case and for attorney fees expended in the defense. Both parties filed cross-motions for summary judgment, and the trial court granted Cincinnati's after determining that, about a year before the settlement, West had failed to disclose in answers to interrogatories that the West policy also covered Cincinnati's insured. West appealed, arguing that an insurer has no obligation to defend an insured, regardless of West's actual notice of the lawsuit, until the insured tenders its defense to the insurer. The appellate court affirmed, and West appealed to the Illinois Supreme Court.

{¶ 18} The issue before the Court was "whether an insurer's duty to defend its insured arises upon its receipt of actual notice of the suit against its insured, or whether the duty to defend is triggered only upon the insured's tender of its defense to the insurer." *Cincinnati* at 318-319. Put another way, the question was whether West's duty to defend was triggered at the time at which actual notice of the lawsuit was acquired, even though at that time the other defendant had not tendered its defense to West. *See id.* at 322-323.

{¶ 19} We distinguish the *Cincinnati* case because it specifically did not deal with the language of the insurance policy or whether there were any policy defenses and conditions. "We note that neither Cincinnati nor West American argues governance of the terms of the policy with respect to when the duty to defend arises. Consequently, policy

defenses have not been a factor in our decision." *Id.* at 323, fn. 1. Here, the explicit requirements of the policy *are* at issue. Furthermore, the *Cincinnati* decision does not disclose whether the West policy was a claims-made or occurrence policy, although one can surmise from the timing of aspects of the case that the West policy was an occurrence policy. That would make the *Cincinnati* decision inapplicable to issues about notice for the claims-made policy here. In any event, the *Cincinnati* decision is not binding authority for this court.

{¶ 20} The focus of our analysis is on the terms of the insurance contract between the parties. "Notice provisions in insurance contracts are conditions precedent to coverage." *Goodyear Tire & Rubber Co. v. Aetna Casualty & Surety Co.*, 95 Ohio St. 3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 14. "Where an insurance policy contains a provision requiring notice of loss, such notice is a condition precedent to a right of action on the policy." *Elkins v. American International Special Lines Ins. Co.*, 611 F.Supp.2d 752, 762 (S.D.Ohio 2009), citing *Moyer v. Merchants Fire Ins. Co.*, 72 Ohio Law Abs. 209, 133 N.E.2d 790, 791 (C.P.1952), citing *Kornhauser v. National Surety Co.*, 114 Ohio St. 24, 150 N.E. 921 (1926).

{¶ 21} Notice is a particularly important matter in claims-made policies. " 'Claims made policies, unlike occurrence policies, are designed to limit liability to a fixed period of time.' " *Id.*, quoting *United States v. A.C. Strip*, 868 F.2d 181, 187 (6th Cir.1989). " 'An occurrence policy provides coverage for acts done during the policy period regardless of when the claim is brought.' " *Mueller v. Taylor Rental Center*, 106 Ohio App.3d 806, 810, 667 N.E.2d 427 (8th Dist.1995), quoting *A.C. Strip* at 184. In contrast, "[a] claims made policy provides coverage for claims brought against the insured only during the life of the

policy." (Citation omitted.) *Elkins* at 761. So "[t]he very essence of a claims-made policy requires the claim to be first made during the policy period." *Mueller* at 810; *see also Wendy's Intern., Inc. v. Illinois Union Ins. Co.*, S.D.Ohio No. 2:05-cv-803, 2007 WL 710242, *9 (Mar. 6, 2007) ("The essence of a claims made policy is a certain reporting 'cut-off date,' regardless of whether the date is the final day of the policy or an extended date as allowed by the policy."). "The reason the insurance industry went to claims-made policies is to clearly define the period for which they were liable rather than to be liable indefinitely for an occurrence which may have occurred years before." *Id.* at 811. "Professional liability policies * * * are commonly claims made policies because malpractice by a professional may not lead to the assertion of a claim until years after expiration of the insurance policy." *Elkins* at 762.

**{¶ 22}** "In interpreting the policy language, we keep in mind that '[a]n insurance policy is a contract; in interpreting contracts, courts must give effect to the intent of the parties, and that intent is presumed to be reflected in the plain and ordinary meaning of the contract language.' " *Smith v. Erie Ins. Co.*, Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-7742, ¶ 18, quoting *Granger v. Auto-Owners Ins.*, 144 Ohio St.3d 57, 2015-Ohio-3279, 40 N.E.3d 1110, ¶ 20. If the terms of the contract are clear and unambiguous, " '[a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.' " *Twin Maples Veterinary Hosp. v. Cincinnati Ins. Co.*, 159 Ohio App.3d 590, 2005-Ohio-430, 824 N.E.2d 1027, ¶ 22 (2d Dist.), quoting *Santana v. Auto Owners Ins. Co.*, 91 Ohio App.3d 490, 494, 632 N.E.2d 1308 (6th Dist.1993).

**{¶ 23}** Here, the policy states that before a claim is covered TDC must receive at its offices a "written communication" from a Protected Party about a potential claim before

the policy expires. The policy imposes a duty on the party to notify TDC about the potential claim "in writing" and to forward to TDC any document that it received relating to the claim. In addition, the party has a duty to provide "written details" about the claim. The policy requires that notice be made by the Protected Party itself or by someone "on behalf of" the party, like an agent or representative. Neither WSP nor Dr. Lacey satisfied any of these requirements.

{¶ 24} In addition, the policy implicitly rejects the idea that actual notice is sufficient. The policy twice states that each Protected Party must satisfy the notice requirements:

> If **we** receive a *Claim Report* during this *Policy Period* from one Protected Party, this Policy will not respond on behalf of any other Protected Party unless **we** also receive a *Claim Report* from such other Protected Party during this *Policy Period.* [Section III].
>
> A report to **us** of a *Claim* or *Probable Claim Event* by or on behalf of one or more Protected Parties is not a report by or on behalf of any other Protected Party. [Section VIII, ¶ f].

This means that if WSP had given TDC written notice of the minor child's potential claim against it but did not mention the potential claim against Dr. Lacey, TDC would not be obligated to defend or indemnify the physician—even though the claims arose out of the same incident. It would be contrary to the intent expressed in these provisions to allow CMC—an unrelated party that acted on behalf of neither WSP nor Dr. Lacey—to satisfy the policy's notice requirements.

{¶ 25} Reading the policy as a whole, the notice provisions provide strict reporting requirements. WSP and Dr. Lacey were required to strictly comply with these requirements. We conclude that even if TDC had actual notice of the claims against WSP and Dr. Lacey, this type of notice does not satisfy the policy's notice requirements. Therefore TDC did not breach the policy by refusing to provide coverage for the minor's malpractice claim against WSP and Dr. Lacey.

{¶ 26} The first assignment of error is overruled.

## B. Bad faith

{¶ 27} The second assignment of error argues that the trial court erred by granting summary judgment on the bad-faith claim. Concerning bad-faith claims, we have said the following:

> Under Ohio law, an insurer has a duty to act in good faith in processing and paying valid claims. *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276, 6 OBR 337, 452 N.E.2d 1315. Therefore, an insured may bring a cause of action in tort against the insurer for breach of that duty. *Id.* To successfully assert a bad-faith claim, the insured must show that the insurer failed to exercise good faith in processing a claim by refusing to pay or to defend the claim, when not based upon "circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397.

*Ohio Bar Liab. Ins. Co. v. Hunt*, 152 Ohio App.3d 224, 2003-Ohio-1381, 787 N.E.2d 82, ¶ 28 (2d Dist.).

**{¶ 28}** Here, the basis of the bad-faith claim appears to be that TDC failed to take any action despite having actual notice of a claim against WSP. Given the policy language on notice, no reasonable trier of fact could conclude that TDC acted unreasonably in denying WSP's claim.

**{¶ 29}** The second assignment of error is overruled.

### III. Conclusion

**{¶ 30}** We have overruled both assignments of error presented. Therefore the trial court's judgment is affirmed.

. . . . . . . . . . . . .

FAIN, J., and WELBAUM, J., concur.

Copies mailed to:

Jonathan Hollingsworth
Sabrina Haurin
Michael Goodstein
Hon. Dennis J. Langer