[Cite as *Sammetinger v. Kirk Bros. Co., Inc.*, 2010-Ohio-1500.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY


WILLIAM H. SAMMETINGER,

    PLAINTIFF-APPELLEE,

    v.                               CASE NO. 8-09-15

BUREAU OF WORKERS' COMPENSATION,

    DEFENDANT-APPELLEE,
    -and-                            O P I N I O N

KIRK BROS. CO., INC.,

    DEFENDANT-APPELLANT.


WILLIAM H. SAMMETINGER, ET AL.,

    PLAINTIFFS-APPELLEES,

    v.                               CASE NO. 8-09-16

CHRISTOPHER P. SAMMETINGER, ET AL.,

    DEFENDANTS-APPELLEES,
    -and-                            O P I N I O N

KIRK BROS. CO., INC.,

    DEFENDANT-APPELLANT.


**Appeals from Logan County Common Pleas Court**
**Trial Court Nos. CV 08 05 0288 and CV08 07 0376**

**Judgments Affirmed**

**Date of Decision: April 5, 2010**

Case Nos. 8-09-15 and 8-09-16

**APPEARANCES:**

> *Christine L. Robek and Scott R. Brown* **for Appellant,**
> **Kirk Bros. Co., Inc.**

> *Richard E. Siferd and Walter M. Lawson, III* **for Appellees,**
> **William H. and Sharon Sammetinger**

> *J. Stephen Teetor and Paul A. MacKenzie* **for Appellee,**
> **Westfield Insurance Company**

> *James D. Utrecht* **for Appellee, Christopher Sammetinger**

> *Charissa D. Payer,* **Attorney for Bureau of Worker's Compensation**

**SHAW, J.**

**{¶1}** In Case Number 8-09-15, the defendant-appellant, Kirk Brothers, Co., Inc. ("Kirk Bros."), appeals the July 1, 2009 judgment of the Common Pleas Court of Logan County, Ohio, granting summary judgment in favor of the plaintiff-appellee, William Sammetinger ("William"), and denying Kirk Bros.' motion for summary judgment, having found that William's injuries occurred in the course of and arose out of his employment with Kirk Bros. In that same case, Kirk Bros. also appeals the September 3, 2009 judgment, awarding attorneys fees and court costs in favor of William and against Kirk Bros.

**{¶2}** In Case Number 8-09-16, the defendant-appellant, Kirk Bros., also appeals the July 1, 2009 judgment of the Common Pleas Court of Logan County,

Ohio, granting summary judgment in favor of the defendant-appellee, Christopher Sammetinger ("Chris"), and partial summary judgment of the defendant-appellee, Westfield Insurance Company ("Westfield"). Additionally, Kirk Bros. appeals the August 7, 2009 judgment in this same case number, finding in favor of Westfield on its cross-claim for declaratory judgment against Kirk Bros., overruling Kirk Bros.' motion to strike Westfield's defense that William was injured in the course of and arising out of his employment with Kirk Bros., and dismissing Kirk Bros.' cross-claim against Westfield, having determined that Westfield had no duty to defend or indemnify Kirk Bros. under its policy of insurance with Westfield because William was injured in the course of and arising out of his employment with Kirk Bros.

{¶3} The undisputed facts relevant to these consolidated appeals are as follows. In June of 2007, William worked for Kirk Bros., a construction company, as a masonry superintendent. At that time, William was assigned to a job site in Powell, Ohio, where the company was building a new high school. William lived in Wapakoneta, Ohio, approximately seventy-eight miles west of the job site, and drove a company-owned truck to and from his home to the job site, where he supervised over fifty employees. During that summer, the employees assigned to the masonry work on the high school worked from 7:00 a.m. until 3:30 p.m. William, as supervisor, was also at the site during these times and was always the

-3-

last to leave, sometime between 3:30-4:00 p.m., because he was responsible for ensuring that the gang boxes and trailers at the site were locked for the night and that the material laid in the wall that day was counted.

{¶4} As masonry superintendent, William had numerous responsibilities both on and off the job site. These responsibilities included supervising the masons and other laborers assisting on the masonry work, performing the layout for the masonry work, ensuring the accuracy of the work, coordinating the masonry work with other trades working on the construction of the high school, ensuring compliance with the project's schedule, ensuring compliance with safety standards, ordering materials and equipment, and the hiring and firing of employees under his supervision. In addition, William often transported equipment to the job site from other Kirk Bros.' construction sites, made trips to the local Home Depot and/or Lowe's to buy supplies as needed, and provided transportation for other workers who needed a ride to work.

{¶5} He also had administrative aspects to his position as masonry supervisor, including completing paperwork such as the time sheets of the workers and payroll, keeping a log of materials, keeping the minutes of job meetings he had, and completing requests for information to and from architects, engineers, etc. Once a week, William would deliver this paperwork to the home of his

supervisor, Denny Lange, in Lima, Ohio, approximately twenty miles north of his home in Wapakoneta.

{¶6} As part of his job, William would also load a number of water containers and gasoline cans into the back of his work truck at the end of each day in order to fill them for the following day. He usually stopped at a gas station in Russells Point, Ohio, or at a station in Wapakoneta to fill the gas cans and to purchase ice for the next day. Every other day, he would also fill the gas tank in the truck when he stopped to fill the gas cans. William paid for the ice and the gasoline with a Kirk Bros. credit card. At home, William would clean the water containers and fill them for the next day. He also transported an assortment of small tools and equipment back and forth with him in the truck, which he would then park in his garage for safe-keeping due to criminal activity involving the theft of small tools at the job site. On occasion, William would also make minor repairs to this equipment, change filters in the cut-off saws, and other things of that nature while at home.

{¶7} To facilitate his work, Kirk Bros. not only provided William with a company-owned truck but also with a cellular phone. William would often field calls on this cellular phone throughout the day, both before and after his shift at the job site. These calls were for a variety of work-related issues, such as calls from salesmen, suppliers, laborers seeking work, employees calling in sick, his

supervisors discussing the job, and the equipment manager calling to arrange a time to service a piece of equipment. He received these calls anywhere from 5:00 a.m. until 10:00 p.m.; they lasted anywhere from thirty seconds to ten minutes; and they occurred while he was driving to and from the job site in the company truck, while he was at the site, and while he was home.

{¶8} On June 14, 2007, William worked his normal shift at the job site. At the end of the day, William asked his son and fellow Kirk Bros. employee, Christopher Sammetinger ("Chris"), to drive the company truck to their home in Wapakoneta because he had a long day and was tired. Chris then drove their normal route home, taking U.S. Highway 33 westbound. Somewhere between Bellefontaine, Ohio, and Russells Point, Chris fell asleep. He awakened as the vehicle veered from its intended course and attempted to correct the vehicle's path of travel. However, Chris lost control of the vehicle, causing it to leave the roadway and flip over. Both William and Chris were able to crawl out of the truck from the driver's side window. They were each transported via ambulance to a local hospital, but William sustained life-threatening injuries and was transported to OSU Hospital in Columbus, Ohio.

{¶9} As a result of the accident, William received multiple injuries and was comatose for approximately two months. Among his injuries were a broken shoulder, broken collarbone, lumbar fracture, a number of broken ribs, a punctured

lung, and a torn diaphragm. William was unable to walk for four months and had to undergo physical therapy. Eventually William was able to return to work at Kirk Bros. on a part-time basis. As of December 2008, William was working thirty hours per week and only able to lift a maximum of twenty-five pounds.

{¶10} William filed a claim with the Bureau of Workers' Compensation ("BWC") in 2007, which was allowed. Kirk Bros. appealed this decision through the administrative process. After exhausting its administrative remedies, Kirk Bros. appealed the allowance of William's claim by the BWC in the Common Pleas Court of Logan County, Ohio. Accordingly, William filed a complaint in that court on June 9, 2008, claiming he was entitled to workers' compensation because his injuries occurred in the course of and arose out of his employment. This complaint was assigned Case Number CV 08 05 0288 (on appeal, it is Case Number 8-09-15) and listed Kirk Bros. and the BWC as defendants.[1]

{¶11} A month later, William and his wife, Sharon, filed a complaint in the Logan County Common Pleas Court. This case was assigned Case Number CV 08 07 0376 (on appeal, it is Case Number 8-09-16). This suit named Chris and Progressive Insurance Company as defendants and alleged causes of action for negligence and loss of consortium against Chris and requested coverage under the uninsured/underinsured motorist ("UM/UIM") provision of their policy of

---

[1] The BWC filed an answer to William's complaint, admitting all the allegations of the complaint and requesting that William be allowed to participate in the Workers' Compensation Fund.

insurance with Progressive.[2]  This complaint was later amended on August 12, 2008, to include Westfield as a defendant, alleging that Kirk Bros.' policy of insurance with Westfield provided William with coverage for his accident in a company-owned vehicle.

{¶12} Shortly thereafter, William and Sharon filed a motion in both cases to request that the two cases be "joined together."[3]  Westfield filed a similar motion, asking that the cases be consolidated and that Kirk Bros. and the BWC be joined as parties in Case No. CV 08 07 0376.  The trial court consolidated these cases and ordered that the BWC be joined as a party-plaintiff and Kirk Bros. be joined as a party-defendant in CV 08 07 0376.

{¶13} In October of 2008, Westfield filed a counter-claim for declaratory judgment against William and cross-claims for declaratory judgment against Chris and Kirk Bros., requesting that the trial court find that its policy of insurance for Kirk Bros. did not provide UM/UIM or liability coverage for William's accident, that it had no obligations to Kirk Bros. from this accident, and that it had no duty to defend or indemnify Chris or Kirk Bros. for any liability for this accident.

---

[2] Progressive later filed a motion for summary judgment, asserting that the Sammetingers' policy of insurance did not include UM/UIM coverage.  The Sammetingers admitted that their Progressive policy in effect at the time of the accident did not provide UM/UIM coverage, and summary judgment was granted to Progressive.  Thus, the complaint as to Progressive was dismissed with prejudice and is not part of the instant appeals.

[3] Although this motion requested joinder and referred to Civ.R. 19, the substance of the motion requested a consolidation of the cases.

{¶14} Kirk Bros. also filed a cross-claim against Westfield. In this claim, Kirk Bros. denied that William was entitled to participate in the Workers' Compensation Fund because he was not injured in the course of and arising out of his employment with Kirk Bros. Kirk Bros. requested a declaration of its rights and Westfield's obligations as to William's accident under the policy of insurance, specifically requesting that the court declare that Westfield is required to provide coverage for William's accident.

{¶15} In the workers' compensation suit, both Kirk Bros. and William filed motions for summary judgment. In the personal injury suit, Chris filed a motion for summary judgment, stating that he was immune from liability under the Workers' Compensation Act, specifically R.C. 4123.741, as a "fellow employee" of the injured employee. Westfield also filed a partial motion for summary judgment as to liability coverage because of certain exclusions in its policy regarding workers' compensation claims and bodily injuries to an employee arising out of and in the course of employment with the insured or while performing duties related to the conduct of the insured's business.[4]

{¶16} On July 1, 2009, the trial court granted summary judgment in favor of William on his workers' compensation claim and denied the summary judgment motion of Kirk Bros. as to this suit, finding that William's injuries occurred in the

---

[4] Westfield also argued that it was entitled to summary judgment regarding liability coverage under its "Fellow Employee" exclusion. However, Westfield later withdrew this argument, having discovered that Kirk Bros. paid an additional premium to remove the "Fellow Employee" exclusion from the policy.

course of and arising out of his employment with Kirk Bros. Having found that William was entitled to participate in the Workers' Compensation Fund, the trial court also granted Chris' motion for summary judgment under the fellow employee immunity statute and ordered that the complaint against him be dismissed with prejudice. Likewise, the court granted Westfield's motion for summary judgment and ordered that the complaint against it be dismissed with prejudice. Subsequently, the court awarded William attorney's fees and costs against Kirk Bros. pursuant to the Workers' Compensation Act.

{¶17} After the court determined that William was entitled to participate in the Workers' Compensation Fund and issued its various grants of summary judgment, the only remaining issues involved were the cross-claims between Kirk Bros. and Westfield regarding whether Westfield was required to defend and indemnify Kirk Bros. and Kirk Bros.' motion to strike Westfield's defense that William's injuries occurred in the course of and arising out of his employment with Kirk Bros. Thereafter, the trial court granted Westfield's request for declaratory judgment and declared that Westfield had no duty to defend or indemnify Kirk Bros. In accordance with this determination, the court overruled Kirk Bros.' motion to strike and dismissed its cross-claim for declaratory judgment. These appeals followed, and Kirk Bros. now asserts four assignments of error.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT KIRK BROS. CO., INC.'S MOTION FOR SUMMARY JUDGMENT AND FINDING THAT PLAINTIFF-APPELLANT WILLIAM SAMMETINGER'S INJURIES WERE RECEIVED IN THE COURSE OF, AND ARISING OUT OF, HIS EMPLOYMENT.**

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN GRANTING PLAINTIFF-APPELLEE WILLIAM SAMMETINGER'S AND DEFENDANT-APPELLEES CHRISTOPHER SAMMETINGER AND WESTFIELD INSURANCE COMPANY'S MOTIONS FOR SUMMARY JUDGMENT AND FINDING THAT SAMMETINGER'S INJURIES WERE RECEIVED IN THE COURSE OF, AND ARISING OUT OF, HIS EMPLOYMENT.**

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED IN AWARDING PLAINTIFF-APPELLEE WILLIAM SAMMETINGER STATUTORY ATTORNEY'S FEES AND COSTS BASED ON AN UNDERLYING ERRONEOUS FINDING THAT SAMMETINGER IS ENTITLED TO PARTICIPATE IN THE WORKERS' COMPENSATION FUND.**

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED IN GRANTING DECLARATORY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE WESTFIELD INSURANCE COMPANY IN ITS CROSS-CLAIM AGAINST DEFENDANT-APPELLANT KIRK BROS.; IN DECLARING THAT WESTFIELD INSURANCE COMPANY HAS NO DUTY TO DEFEND OR INDEMNIFY KIRK BROS. OR ITS EMPLOYEES; AND IN DISMISSING KIRK BROS. CROSS-CLAIM AGAINST WESTFIELD INSURANCE COMPANY.**

*First, Second, and Third Assignments of Error*

**{¶18}** The first, second, and third assignments of error center upon the issue of whether William's injuries were received in the course of and arising out of his employment with Kirk Bros. Thus, we elect to address these assignments of error together.

**{¶19}** In its first two assignments of error, Kirk Bros. maintains that the trial court should have granted summary judgment in its favor and overruled William's motion for summary judgment as to the workers' compensation claim. Likewise, Kirk Bros. asserts that the motions for summary judgment of Chris and Westfield, which were premised upon a finding that William's injuries were received in the course of and arising out of his employment with Kirk Bros., should also have been overruled. Alternatively, Kirk Bros. contends that a genuine issue of material fact exists regarding whether William's injuries were received in the course of and arising out of his employment with Kirk Bros.

**{¶20}** When reviewing a summary judgment ruling made by a court of common pleas from an appeal of a decision by the Industrial Commission, an appellate court applies the same standard used to review any other summary judgment ruling. *Conley-Slowinski v. Superior Spinning & Stamping Co.* (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991. The appellate court review of summary judgment is made independently, and without any deference to the trial

court. The standard of review for a grant of summary judgment is de novo. *Hasenfratz v. Warnement*, 3rd Dist. No. 1-06-03, 2006-Ohio-2797, citing *Lorain Nat'l. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 572 N.E.2d 198.

**{¶21}** A grant of summary judgment will be affirmed only when the requirements of Civ.R.56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R.56(C); see *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196, 1995-Ohio-286, paragraph three of the syllabus.

**{¶22}** Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ.R. 56(E). In ruling on a summary judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences, rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Additionally, Civ.R.56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written

admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

### A.  Summary Judgment for William-
### Workers' Compensation Case (No. 8-09-15)

**{¶23}** Kirk Bros. maintains that the trial court incorrectly applied the law to the facts of this case when it granted William's, Chris', and Westfield's motions for summary judgment and overruled its motion.  Specifically, Kirk Bros. asserts that William's injuries did not occur "in the course of" and "arising out of" his employment with Kirk Bros.

**{¶24}** Revised Code section 4123.01(C) defines a compensable injury under the Workers' Compensation Act as the following: "'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."  In order to participate in the fund, the employee must prove that the injury occurred while "in the course of" and "arising out of" the injured employee's employment.  *Bralley v. Daugherty* (1980), 61 Ohio St.2d 302, 303, 401 N.E.2d 448.  These two prongs are conjunctive, requiring both to be satisfied before compensation is allowed.  *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 277, 551 N.E.2d 1271.  In applying this test, the primary inquiry is "whether a 'causal connection' existed between an employee's injury and his employment

either through the activities, the conditions or the environment of the employment." *Bralley*, 61 Ohio St.2d at 303, 401 N.E.2d 448.

{¶25} To facilitate an analysis of the first prong, the Supreme Court of Ohio summarized "in the course of" employment in the following manner:

> **The phrase "in the course of employment" limits compensable injuries to those sustained by an employee while performing a required duty in the employer's service. "To be entitled to workmen's compensation, a workman need not necessarily be injured in the actual performance of work for his employer." An injury is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business.**

*Ruckman v. Cubby Drilling, Inc.,* 81 Ohio St.3d 117, 120, 689 N.E.2d 917, 1998-Ohio-455 (internal citations omitted). An assessment of this prong requires a consideration of factors such as "time, place, and circumstances" of the injury to determine the existence of a nexus between the employment and the activity causing the injury. *Fisher*, 49 Ohio St.3d at 277. "'[I]f the injuries are sustained [off premises], the employee, acting within the scope of his employment, must, at the time of his injury, have been engaged in the promotion of his employer's business and in the furtherance of his affairs.'" *Ruckman*, 81 Ohio St.3d at 121, 689 N.E.2d 917, quoting *Indus. Comm. v. Bateman* (1933), 126 Ohio St. 279, paragraph two of the syllabus, 185 N.E. 50.

{¶26} The second prong, "arising out of," contemplates a determination as to whether a sufficient causal connection between the injury and the employment

exists to warrant compensation. *Ruckman*, supra. The analysis under this prong requires a totality of the circumstances review of the incident. The Supreme Court of Ohio put forth a framework of three basic factors to assist a court in determining whether an injury arose out of the employee's employment: "1) the proximity of the scene of the accident to the place of employment; 2) the degree of control the employer had over the scene of the accident; and 3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 444, 423 N.E.2d 96.

**{¶27}** In *Fisher*, the Ohio Supreme Court noted that the list of factors in *Lord* was not intended to be exhaustive, but rather illustrative, and that the proper approach to resolving the issue was based upon an evaluation of the totality of the circumstances, which would continue to evolve. *Fisher*, 40 Ohio St.3d at 279, 551 N.E.2d 1271, n. 2. Thus, in making this determination, we must be mindful that workers' compensation cases are intensely fact specific and a flexible and analytically sound approach is preferable to rigid rules that can lead to unsound and unfair results. *Id.* at 280. Further, the workers' compensation statutes must be liberally construed in favor of the employee. R.C. 4123.95; *Fisher*, 49 Ohio St.3d at 278.

**{¶28}** Generally, "an employee with a fixed place of employment, who is injured while traveling to and from the place of employment, is not entitled to

compensation under the Workers' Compensation Fund because the requisite causal connection between injury and the employment does not exist." *MTD Products, Inc. v. Robatin* (1991), 61 Ohio St.3d 66, 68, 572 N.E.2d 661, citing *Bralley*, supra. However, there are exceptions to the general rule barring compensation when the injury occurs while the employee is "coming and going" to and from his place of employment: if the injury occurs in the "zone of employment;" if it was a result of a "special hazard" of the employment; or if, based upon the totality of the circumstances, there is a sufficient causal connection between the injury and the employment to warrant compensation. Moreover, the Ohio Supreme Court has long recognized that exceptions exist to the requirement that the injury must be suffered at or near the place of employment or within the zone of employment:

> **(1) where the employer, as an incident of the employment, provides the means of transportation to and from the place of employment; * * * and (3) where the employee is charged while on his way to or from his place of employment or at his home with some duty in connection with his employment.**

*Stevens v. Indus. Comm'n.* (1945), 145 Ohio St. 198, 200-201, 61 N.E.2d 198; see also, *De Camp v. Youngstown Muni. Ry. Co.* (1924), 110 Ohio St. 376, 379-380, 144 N.E. 128; *Fink v. Indus. Comm'n.* (8th Dist. 1937), 25 Ohio Law Abs. 21; *Keller v. Beacon Journal Publishing Co.* (Feb. 21, 1996), 9th Dist. No. 17428,

1996 WL 73395, discretionary appeal not allowed by 76 Ohio St.3d 1438, 667 N.E.2d 987

{¶29} Here, the parties do not dispute that William was a fixed-situs employee. Rather, the issue is whether he was simply coming home from work, as the majority of Ohioans do every day, and thus not entitled to participate in the fund, or whether he was acting for the benefit of his employer when he was injured and thus entitled to workers' compensation given the totality of the circumstances surrounding his injuries. We find the latter more accurately describes the facts of this case.

{¶30} Notably, none of William's off-site duties was disputed by any of the parties, including Kirk Bros. Every work day, William closed down the masonry work on the high school and loaded up the pick-up truck that was assigned to him by Kirk Bros. with tools and equipment belonging to Kirk Bros. for transport to and safe-keeping in William's garage at home. Every day on his way home, he stopped for gas, which was needed to operate a number of tools for the construction of the high school the following day. He also stopped to purchase ice for the following day because fresh ice was required by contract to be provided by Kirk Bros. to the workers at the site every day. William also refueled his work truck every other day because the truck was needed to provide him with transportation to and from the site, to provide transportation for other workers who

may have needed a ride, and to deliver William's paperwork to Dennis Lange in Lima once a week. The truck was also assigned to William for use on errands such as picking up equipment from other Kirk Bros.' job sites to be used at the high school or to make a run to a local hardware store during the day, and to transport the water containers and ice to and from the job site every day. The ice and gas purchases, which always occurred either in Russells Point or Wapakoneta, were made with a credit card provided by Kirk Bros.

**{¶31}** Once he was home, William parked the truck in his garage in order to protect the tools and equipment in the truck from theft because a fair amount of tools had been stolen from the job site. In addition, William occasionally performed small repairs and maintenance on some of these tools and pieces of equipment at his home. He also cleaned the water containers and re-filled them at his home because the contract required Kirk Bros. to supply fresh water to the workers every day. Often times, he had a significant amount of paperwork with him to complete because he was unable to finish it during the day because his attention was needed in some other function of his job. Therefore, he would complete this paperwork at home.

**{¶32}** Throughout the day, beginning at approximately 5:00 a.m. and continuing until approximately 10:00 p.m., William received phone calls on his employer-provided cellular phone. As previously noted, these calls were for a

variety of work-related issues. Often times these calls occurred in the morning while William was going to the job site or during the afternoon while he was coming home from the job site. He also received work-related calls at his home.

{¶33} Indisputably, with the exception of an occasional call from his wife, all of these actions by William were directly for the benefit of his employer, Kirk Bros. While the location where William bought the ice and gas was of his own choosing, stopping to purchase these items, bringing home the containers to clean them and fill them with fresh water, transporting the tools and equipment for safe-keeping, completing his paperwork for timely delivery to Dennis Lange every week, and receiving and making phone calls whenever and wherever, were all performed solely for Kirk Bros.' benefit and in an effort to further its best interests. In fact, William summarized it best in his deposition: "My scope of employment doesn't end at 3:30 and doesn't start at 7 o'clock. There are responsibilities that go with my position that I can't control that need to be done, and I'm good at what I do, therefore I do it." Once again, Kirk Bros. presented no evidence to contradict this statement by William or any of the foregoing evidence regarding the work-related use of the company truck by William.

{¶34} Kirk Bros. also presented no evidence to demonstrate that William's off-site activities were prohibited by it or that William was ever instructed to complete his tasks in a different manner. Although the credit card receipts would

have shown that the gasoline and ice were being purchased at a location over fifty miles away from the job site, as well as the undoubtedly high amount of gasoline that was being purchased to drive the truck from Wapakoneta to the high school and back every day, the record is devoid of any evidence that Kirk Bros. told William to purchase these items closer to the job site and not to use its truck and gasoline for daily transportation to and from his home. To the contrary, Kirk Bros., at a minimum, acquiesced to William making these purchases far from the job site and to using the truck for his daily commute.

{¶35} Further, there is no evidence that William was ever instructed not to deliver his paperwork to Dennis Lange's home, not to complete it at his home, not to work on, transport, or house any of the equipment at his home, or not to make and receive work-related calls after he left the job site. Rather, the evidence indicates that William's position as a supervisor required him to shoulder a number of responsibilities, to act in the best interest of Kirk Bros.' business, and to do what was necessary to effectively fulfill his role as supervisor, whether he was at the job site, off the job site, or en route to accomplish one of his many required tasks. Moreover, Kirk Bros. provided him with a vehicle, which he never used for personal business, and a phone to aid him in his duties. In sum, the evidence demonstrates that in many ways, the truck, which was under Kirk Bros.' control, was William's mobile work place.

{¶36} Furthermore, at the time of the accident, William had not completed his work for the day. The accident occurred at a point located between the high school and Russells Point. Russells Point was one of two locations where William always stopped for gas and ice, the other being in Wapakoneta, which William had yet to reach. Thus, William was still en route to purchase the gasoline and ice for the following day when the accident occurred. He also had yet to clean and fill the water containers for the following day. As was customary for him, he was also transporting a number of tools from the high school to his home for safe-keeping at the time he was injured. In addition, shortly before the accident, William received a work-related call on his cellular phone.

{¶37} In short, Kirk Bros. provided the vehicle in which William was injured as an incident to his employment; at a minimum, Kirk Bros. acquiesced to the performance of some of his job duties being conducted on his way to and from work and at his home; it benefitted from the use of his garage to safely keep the vehicle and a number of its tools and equipment overnight; and Kirk Bros. required William to handle phone calls related to its business whenever they might occur, including on his drive to and from the job site and at his home. While Kirk Bros. may not have directly paid William for each minute he spent doing its business while en route to and from work and at home, as William admitted he never charged his employer for the time he spent after the job site closed for the

day on any phone calls, getting gas and ice, cleaning and filling the water containers, or maintaining and repairing the equipment he transported, this fact is of little consequence in light of the benefit Kirk Bros. undoubtedly received from him.

{¶38} Thus, given the broad spectrum of responsibilities that William had as a masonry supervisor for Kirk Bros., as well as the undisputed fact that these responsibilities necessitated him performing some of them away from the high school, including while en route to and at his home, the only reasonable conclusion in examining the totality of the facts and circumstances surrounding William's injuries is that they occurred in the course of and arising out of his employment for Kirk Bros. Therefore, the trial court did not err in denying Kirk Bros.' motion for summary judgment and granting William's motion for summary judgment in the workers' compensation suit, Case No. 8-09-15. Accordingly, the first assignment of error is overruled, as is that portion of the second assignment of error regarding William's motion for summary judgment.

### B. Summary Judgments for Chris and Westfield-Personal Injury Case (No. 8-09-16)

{¶39} Having found that the trial court did not err in determining that William was entitled to participate in the Workers' Compensation Fund, the next issue is whether the trial court erred in the personal injury suit, Case No. 8-09-16, by granting Chris' motion for summary judgment and Westfield's partial motion

for summary judgment as to liability coverage under the policy it issued to Kirk Bros. Both determinations by the trial court were based upon its conclusion that William's injuries arose out of and in the course of his employment.

### 1. Chris' Summary Judgment

**{¶40}** As to Chris' motion for summary judgment, the trial court found that William's personal injury suit against Chris was barred by the fellow-employee immunity statute, R.C. 4123.741. This sections states:

> **No employee of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, or for any death resulting from such injury or occupational disease, on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code.**

Because Chris was an employee of Kirk Bros. and William's injuries occurred in the course of and arising out of his employment with Kirk Bros., the trial court granted Chris' summary judgment and dismissed the complaint against him.

**{¶41}** Kirk Bros. does not dispute that Chris was a fellow-employee or that R.C. 4123.741 applies if William's injuries are compensable under the workers' compensation statutes. Again, it maintains that William's injuries fall outside of the scope of workers' compensation. Given our discussion regarding William's injuries being compensable under the Workers' Compensation Act and the

-24-

undisputed fact that Chris was an employee of Kirk Bros. at the time of the accident, R.C. 4123.741 applies to bar recovery from Chris, and this portion of the second assignment of error is overruled.[5]

## 2. Westfield's Summary Judgment

**{¶42}** As for Westfield, its policy with Kirk Bros. states:

**A. Coverage:**

**We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."**

**We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.**

**{¶43}** In this case, the trial court determined that Chris was not liable for any damages to William and Sharon because of the immunity afforded to him by

---

[5] We also note that after the grant of summary judgment to Chris and Westfield but prior to the time period to appeal expired, William and Sharon settled their claims against Chris and Westfield, releasing all claims against them, and never filed an appeal of the court's decision as to summary judgment in favor of Chris and Westfield. After Kirk Bros. filed its appeals in these cases, Chris and Westfield filed motions to dismiss the appeals against them with this Court as being moot because the complaint against them was fully settled. Although we overruled these motions, we now note that even if we were to determine that William was not entitled to participate in the fund, William's and Sharon's claims against Chris cannot be revived due to the language of the settlement. Thus, whatever our decision in this case, the claims against Chris by his parents are settled. Nevertheless, we elected to discuss this portion of the assignment of error to demonstrate that William's entitlement to participate in the fund affected the remainder of Case No. 8-09-16.

R.C. 4123.741. Kirk Bros. was not sued for damages. The insurance policy specifically states that Westfield would pay for all sums an insured must pay as *damages* because of bodily injury caused by an accident and resulting from the use of a covered auto. While the term "damages" is not defined in the policy, the rules of contract construction require that this word be given its plain and ordinary meaning. See *Alexander v. Buckeye Pipeline Co.* (1978), 53 Ohio St.2d 241, paragraph two of the syllabus, 374 N.E.2d 146, superceded by statute on other grounds.

{¶44} "'Damages' has been defined as the pecuniary compensation paid by a wrongdoer for the losses suffered by an injured person." *Meek v. Gem Boat Service, Inc.* (1990), 69 Ohio App.3d 404, 409, 590 N.E.2d 1296, citing *Cincinnati v. Hafer* (1892), 49 Ohio St. 60, 67, 30 N.E. 197; *Greer v. Knox Cty. Bd. of Commrs.* (1927), 33 Ohio App. 539, 169 N.E. 709; *Drayton v. Jiffee Chem. Corp.* (N.D.Ohio 1975), 395 F.Supp. 1081. Therefore, in light of this definition, the trial court correctly granted partial summary judgment in favor of Westfield as to the issue of liability coverage on the claims between it, William and Sharon, and Chris because Chris did not have to pay any damages due to bodily injury in the personal injury suit. Accordingly, this portion of the second assignment of error is also overruled.

### C.  Attorney's Fees and Court Costs-
### Workers' Compensation Case (No. 8-09-15)

{¶45} The third assignment of error also relates to the determination of whether William's injuries are compensable under the Workers' Compensation Act.  Here, Kirk Bros. asserts that the trial court's award of attorney's fees and costs to William was in error because the trial court improperly found his injuries to have occurred in the course of and arising out of his employment with Kirk Bros.  Kirk Bros. does not contend that an award of attorney's fees and costs to William is improper if his injuries were, in fact, occasioned in the course of and arising out of his employment pursuant to R.C. 4123.512(F).  This section mandates that the cost of any legal proceedings authorized by that section, including attorney's fees up to $4,200.00, be taxed to the employer if it is determined that the employee is entitled to participate in the fund by a final determination of an appeal.[6]  Based upon our determination as to William's right to participate in the fund, the third assignment of error is also overruled.

*Fourth Assignment of Error*

{¶46} In the fourth assignment of error, Kirk Bros. maintains that the trial court erred in granting declaratory judgment in favor of Westfield on its cross-claim against Kirk Bros., in declaring that Westfield had no duty to defend or

---

[6] The section taxes these amounts to the industrial commission if the commission, rather than the employer, contests the employee's claim.

indemnify Kirk Bros. or its employees, and in dismissing Kirk Bros.' cross-claim for declaratory judgment against Westfield.

**{¶47}** The Ohio Supreme Court has held that "'[t]he granting or denying of declaratory relief is a matter for judicial discretion[.]'" *Mid-American Fire & Casualty Co.* v. *Heasley*, 113 Ohio St.3d 133, 863 N.E.2d 142, 2007-Ohio-1248, at ¶ 12, quoting *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 37, 303 N.E.2d 871. Thus, declaratory judgment actions are to be reviewed under "an abuse-of-discretion standard." *Heasley,* supra. Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶48}** In the case sub judice, both Westfield and Kirk Bros. filed cross-claims against one another for declaratory judgment, requesting that the trial court determine the rights and responsibilities of the parties based upon the insurance policy. In addition to the previously quoted language from the policy at issue, this policy contained the following exclusions:

**B.  Exclusions**

**This insurance does not apply to any of the following:**
\* \* \*

**3.  Workers' Compensation**

**Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.**

**4. Employee Indemnification And Employer's Liability**

**"Bodily injury" to:**

**(a) An "employee" of the "insured" arising out of and in the course of:**

**(1) Employment by the "insured"; or**

**(2) Performing the duties related to the conduct of the "insured's" business; * * ***

**This exclusion applies:**

**(1) Whether the "insured" may be liable as an employer or in any other capacity; * * ***

{¶49} The policy also contained an exclusion for a "Fellow Employee", which stated: "Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business." Initially, Westfield also relied upon this exclusion to assert that it had no duty to defend or indemnify. However, at some point in the litigation, Westfield discovered that Kirk Bros. had paid an additional premium for an endorsement that removed the fellow employee exclusion from the relevant portions of the policy. Kirk Bros. contends that this

endorsement modified the policy in such a way so as to include the precise scenario at issue in this case in its coverage.

**{¶50}** As previously noted, Kirk Bros. was not sued for damages either in the personal injury suit against Chris and Westfield or in the workers' compensation case. Chris was sued for damages, but this claim was dismissed with prejudice and later completely settled. Westfield was sued for damages by William and Sharon under the coverages provided by its policy. However, Kirk Bros. was only made a party to the personal injury suit because it was the holder of the policy under which Westfield was sued for coverage. The only claim made against Kirk Bros. in that case was the declaratory judgment cross-claim filed by Westfield. Although named as the defendant in the workers' compensation case, William's request for relief was not for damages from Kirk Bros. but that he be allowed to participate in the fund. Thus, there were no monetary damages for which to indemnify Kirk Bros., and the trial court did not abuse its discretion in declaring that Westfield had no duty to indemnify Kirk Bros. in Case No. 8-09-16, the personal injury suit.

**{¶51}** However, the question remains as to whether Westfield had a duty to defend Kirk Bros. in the personal injury suit by William and Sharon against Chris and Westfield. The insurer's promise to indemnify is separate and distinct from its obligation to defend an insured in an action, and the duties are triggered by

different events. *Cincinnati Ins. Co. v. Anders*, 99 Ohio St.3d 156, 789 N.E.2d 1094, 2003-Ohio-3048. "Where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured." *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, paragraph two of the syllabus, 294 N.E.2d 874. The Ohio Supreme Court has since expanded this concept, holding "[w]here the allegations state a claim that falls either potentially or arguably within the liability insurance coverage, the insurer must defend the insured in the action." *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 180, 459 N.E.2d 555.

> **A liability insurer's obligation to its insured arises only if the claim falls within the scope of coverage.** *Cincinnati Indemn. Co. v. Martin* **(1999), 85 Ohio St.3d 604, 605, 710 N.E.2d 677. An insurer has a duty to defend the insured "[w]here the allegations state a claim that falls either potentially or arguably within the liability insurance coverage."** *Cincinnati Ins. Co. v. Anders***, 99 Ohio St.3d 156, 789 N.E.2d 1094, 2003-Ohio-3048, at ¶ 18. Conversely, "[t]he insurer need not provide a defense if there is no set of facts alleged in the complaint which, if proven true, would invoke coverage."** *Martin***, 85 Ohio St.3d at 605, 710 N.E.2d 677. Where the action alleged claims that fell within the insurance coverage yet the conduct that prompted the action "is so indisputably outside coverage," the insurer has no duty to defend, so long as the insurance policy only required the insurer to defend against claims to which the coverage applied.** *Preferred Risk Ins. Co. v. Gill* **(1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118. The duty to defend need not arise solely from the allegations in the complaint but may arise at a point subsequent to the filing of the complaint.** *Willoughby Hills v.*

> ***Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555.**

*Twin Maples Veterinary Hosp. v. Cincinnati Ins. Co.*, 159 Ohio App.3d 590, 2005-Ohio-430, 824 N.E.2d 1027, ¶¶ 11-12.

**{¶52}** In this case, the policy clearly states that Westfield has a right and duty to defend its insured (Kirk Bros.) against *a suit asking for damages*. As noted, no such suit existed. Therefore, there was no suit against Kirk Bros. that invoked the obligation of Westfield to defend it. As such, the trial court did not abuse its discretion in determining that Westfield had no duty to defend Kirk Bros. in the personal injury action.

**{¶53}** Nevertheless, Kirk Bros. asserts that its "damages" are the increase in premiums that it must pay to the fund because of William's claim. However, the Revised Code expressly prohibits contracts and agreements for indemnification or insurance for an employer's loss or liability for the payment of compensation to workers for injury occasioned in the course of the workers' employment. R.C. 4123.82(A). This section states:

> **A) All contracts and agreements are void which undertake to indemnify or insure an employer against loss or liability for the payment of compensation to workers or their dependents for death, injury, or occupational disease occasioned in the course of the workers' employment, or which provide that the insurer shall pay the compensation, or which indemnify the employer against damages when the injury, disease, or death arises from the failure to comply with any lawful requirement for the protection of the lives, health, and safety of employees, or when**

**the same is occasioned by the willful act of the employer or any of the employer's officers or agents, or by which it is agreed that the insurer shall pay any such damages.**

R.C. 4123.82(A). Thus, any such contract whereby Westfield would have to indemnify Kirk Bros. for its loss, including increased premiums, based upon a workers' compensation claim is void. See id.

{¶54} Accordingly, Westfield had no duty to indemnify Kirk Bros. for its increased premiums, and the trial court did not abuse its discretion in declaring that Westfield had no duty to indemnify Kirk Bros. in Case No. 8-09-15. Moreover, Westfield also had no duty to defend Kirk Bros., and the trial court, likewise, did not abuse its discretion in declaring that Westfield had no duty to defend Westfield on this claim. Therefore, the fourth assignment of error is overruled in its entirety.

{¶55} For all these reasons, the assignments of error are overruled and the judgments of the Common Pleas Court of Logan County, Ohio, in both cases are affirmed.

*Judgments Affirmed*

ROGERS, J., and *DONOVAN, J., concur.

* (MARY E. DONOVAN, J., from the Second District Court of Appeals Sitting by Assignment)

/jlr