**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0493n.06

Case Nos. 18-3406/3407

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 25, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| EVANSTON INSURANCE CO., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| CERTIFIED STEEL STUD ASSOCIATION, | ) | OHIO |
| INC. and CLARKWESTERN DIETRICH | ) | |
| BUILDING SYSTEMS, LLC, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE: SILER, SUTTON, and WHITE, Circuit Judges.

**SILER**, Circuit Judge. Certified Steel Stud Association, Inc. (CSSA) and Clarkwestern Dietrich Building Systems, LLC (ClarkDietrich) appeal the district court's order declaring that Evanston Insurance Co. (Evanston)—CSSA's insurer—is not required to indemnify CSSA for damages it owes ClarkDietrich based on a judgment ClarkDietrich obtained against CSSA. ClarkDietrich also appeals the district court's order denying its motion for partial summary judgment. We: (1) REVERSE the district court's order granting Evanston's motion for summary judgment, (2) REVERSE the district court's order denying ClarkDietrich's motion for partial summary judgment and instruct the district court to enter partial judgment in ClarkDietrich's favor,

and (3) REMAND for further proceedings to determine the extent of Evanston's indemnity obligation.

I.

ClarkDietrich produces steel products, CSSA is a trade association composed of three entities—all of which are ClarkDietrich's competitors—and Evanston is CSSA's insurer. The insurance policy (the Policy) between CSSA and Evanston states that, barring some exclusion, Evanston will:

> [P]ay on behalf of the Insured all sums in excess of the deductible amount . . . which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD because of:
>
>> (a) any act, error or omission committed by the Insured arising out of the conduct of association business or the administration, operation or management of services provided to the Named Insured's membership;
>>
>> . . .
>>
>> (c) publishers' liability arising out of infringement of copyright, unfair competition or plagiarism, including the unauthorized use of titles, formats, ideas, characters, plots or other material embodied in any literary property used, exhibited or published by the Named Insured or advertising activities conducted by the Named Insured arising out of the conduct of association business or the administration, operation or management of services provided to the Named Insured's membership . . . .

In 2013, ClarkDietrich sued CSSA and its members in Ohio state court, alleging they disseminated false statements about ClarkDietrich and its products. ClarkDietrich claimed that CSSA and its members: (1) violated the Ohio Deceptive Trade Practices Act (ODTPA), (2) engaged in unfair competition, and committed (3) defamation and (4) commercial disparagement (collectively, "the unlawful acts"). According to the complaint, CSSA published false statements in: (1) the CSSA Publication, (2) "TechNote," and (3) an advertisement titled

"Don't Paint Yourself Into a Corner" (the "Advertisement"). ClarkDietrich also asserted that CSSA and its members committed the unlawful acts as part of a civil conspiracy.

CSSA tendered a claim to Evanston for insurance coverage. Evanston agreed to fund CSSA's defense from legal liability up to the Policy's limits.[1] The Policy also required CSSA to "give full assistance and cooperation" to Evanston in its investigation of claims.

During trial, ClarkDietrich repeatedly attempted to settle its claims against CSSA.[2] Initially, ClarkDietrich offered to settle for the Policy limit. CSSA informed Evanston of the offer, but neither accepted. Later, ClarkDietrich sought to settle its claims for one-half of the policy limit; again, CSSA notified Evanston of the offer but neither responded.

One day before closing arguments, ClarkDietrich and CSSA began discussing the possibility of ClarkDietrich dismissing its claims. CSSA informed Evanston of these discussions, but Evanston did not direct CSSA to agree to dismissal. Later that day, ClarkDietrich offered to dismiss its claims against CSSA with prejudice and with no payment from CSSA or its insureds. CSSA notified Evanston of the offer, and Evanston responded: "I would think that would be hard to reject." Nonetheless, CSSA rejected the offer, prompting ClarkDietrich to move to dismiss its claims with prejudice. The next day, CSSA told Evanston that ClarkDietrich had moved to dismiss its claims and that CSSA planned to object to the motion. The court heard argument on the motion and rejected it. Evanston then instructed CSSA to accept ClarkDietrich's offer to dismiss its claims. At that time, however, the offer was no longer on the table.

Because CSSA refused to settle and ClarkDietrich could not persuade the court to dismiss its remaining claims, the court submitted the following claims to the jury: (1) violation of ODTPA,

---

[1] The Policy limits Evanston's liability to $1 million per claim and $3 million total.

[2] ClarkDietrich settled each of its claims against CSSA's members.

Ohio Rev. Code §§ 4164.01-4165.04 and unfair competition,[3] (2) defamation, (3) common-law commercial disparagement, and (4) commission of the unlawful acts in furtherance of a civil conspiracy.

The court then instructed the jury on ClarkDietrich's causes of action. With respect to the civil conspiracy claim, the court explained:

> Before you can find for the plaintiff, you must find by a preponderance of the evidence that the defendant CSSA participated in a malicious combination involving two or more persons, including the defendant, a result of which was the commission of a wrongful act that caused injury to plaintiff. For purposes of this instruction, person includes a company or the officers and agents of any of the companies that are named as defendants in this case.
>
> Proof [that] an underlying unlawful act was committed [i]s required before plaintiff can prevail on its civil conspiracy claim. The unlawful acts plaintiff claims in this case are the dissemination by the defendant of allegedly false or misleading statements as alleged in the Deceptive Trade Practices Act/unfair competition, defamation, and disparagement counts.
>
> . . .
>
> Malicious combination means a common understanding or design, whether spoken or unspoken, entered into with malice by two or more persons to commit a wrongful act. It does not require a showing of an express agreement. It is sufficient that the participants, in any manner, reached a mutual understanding to commit[] a wrongful act. A meeting of the participants is not necessary.
>
> Malice is that state of mind under which a person does a wrongful act intentionally, without a reasonable or lawful excuse, that causes injury.

The jury returned a verdict against CSSA on all counts. Then Evanston sought a judgment in the Southern District of Ohio declaring that it had no obligation to indemnify CSSA for the damages it owed ClarkDietrich. Evanston then moved for summary judgment, asserting that it had no coverage obligation because: (1) the Policy excluded coverage for claims based on

---

[3] The ODTPA claim and unfair competition claim were submitted to the jury as a single claim because the elements of each claim are the same.

dishonest conduct, and, in finding against CSSA, the jury found that it had acted dishonestly; (2) the claims are uninsurable as a matter of law; and (3) CSSA violated the Policy's cooperation clause when it failed to consult Evanston prior to rejecting ClarkDietrich's offer to dismiss the claims against it with prejudice and without payment. In its reply, Evanston raised another argument: ClarkDietrich should be estopped from collecting the limits of Evanston's insurance coverage because it argued during the state-court proceedings that CSSA is a "sham" organization.

In response, ClarkDietrich filed a counterclaim against Evanston pursuant to Ohio Rev. Code § 3929.06(A), a statute that allows a judgment creditor to file a claim against an insurer to satisfy its judgment. ClarkDietrich then moved for partial summary judgment on its counterclaim, arguing that the Policy requires Evanston to indemnify CSSA for the losses CSSA sustained because of ClarkDietrich's ODTPA claim.[4]

The district court granted Evanston's motion for summary judgment and denied ClarkDietrich's motion for partial summary judgment. The court reasoned that the Policy's "dishonest act" exclusion barred coverage because—given that the jury found that CSSA committed the unlawful acts in furtherance of a conspiracy—the jury *necessarily* found that "CSSA's publication was *intentionally* false" and involved a dishonest act. The district court based its decision on the jury verdict, instructions, and interrogatories and did not address Evanston's other arguments.

CSSA and ClarkDietrich appeal that decision. ClarkDietrich separately appeals the court's decision denying its motion for partial summary judgment.

---

[4] ClarkDietrich explained that the portion of the judgment against CSSA attributed to the ODTPA claim ($3.5 million) exceeds Evanston's remaining insurance coverage, so, if Evanston is required to satisfy part of the damages related to that claim, its coverage will be exhausted. Thus, according to ClarkDietrich, it has no incentive to seek judgment or payment from Evanston on the remaining claims.

II.

As noted, this case presents an appeal from a grant of summary judgment and from a denial of partial summary judgment. "This court reviews the district court's grant of summary judgment de novo." *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018). "A denial of summary judgment," however, "is . . . not ordinarily subject to appeal." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363 (6th Cir. 1993) (citation omitted). But where, as here, "an appeal from a denial of summary judgment is presented in tandem with an appeal from a grant of summary judgment, this court has jurisdiction to review the propriety of the district court's denial of summary judgment." *Id.* (citation omitted). When a denial of summary judgment is based solely on legal grounds, review is de novo. *Id.* (citation omitted).

III.

CSSA and ClarkDietrich both assert that the district court erred when it held that Evanston had no obligation to indemnify CSSA, but they raise different arguments and seek different forms of relief. While both seek reversal of the district court's finding of no coverage based on the Policy's "dishonest acts" exclusion, only CSSA asks the panel to remand for trial based on that error. ClarkDietrich asks the panel to instead take a few steps further: analyze and reject all of Evanston's arguments (including the ones the district court did not address), reverse the district court's grant of summary judgment in Evanston's favor, reverse the district court's denial of partial summary judgment in ClarkDietrich's favor, grant ClarkDietrich's motion for partial summary judgment on its counterclaim, and remand the matter for further proceedings and damages determinations.

We will first analyze whether the district court erred in granting summary judgment to Evanston pursuant to the Policy's "dishonest acts" provision. Upon concluding that the district

court erred in this regard, we will assess the other arguments Evanston raises in support of summary judgment. Because no triable issues of fact remain and none of Evanston's arguments is persuasive, we conclude that ClarkDietrich is entitled to partial summary judgment and that the district court erred in denying its motion.

In reaching these conclusions, we are guided by two maxims: First, under Ohio law, the insurer bears the burden of proving that an exclusion applies. *See Cont'l Ins. Co. v. Louis Marx & Co.*, 415 N.E.2d 315, 317 (Ohio 1980). And second, Ohio courts presume that "that which is not clearly excluded from the operation of [an insurance] contract is included in the operation thereof." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1386 (Ohio 1988) (internal quotation and citations omitted).

### A.     The "Dishonest Acts" Exclusion

The Policy's "dishonest act" exclusion states:

This Policy Does Not Apply:

> (a) to any claim based upon or arising out of any dishonest, deliberately fraudulent or criminal act, error, omission, personal injury or publishers' liability committed by or at the direction of the Insured[.]

The district court reasoned that, because the jury found that CSSA committed the unlawful acts in furtherance of a civil conspiracy, CSSA committed each act intentionally. So, the district court explained, the jury *necessarily* found that "CSSA's publication was *intentionally* false"—i.e., a dishonest act.

We disagree.

1.      *Defining Dishonest*

The Policy does not define the term "dishonest act," so, under Ohio law, we must interpret that term consistent with its ordinary meaning.[5] *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1141 (Ohio Ct. App. 2008). Webster's New World Dictionary defines "dishonest" as "characterized by lack of truth, honesty, or trustworthiness." *Dishonest Definition*, Merriam-Webster.com., https://www.merriam-webster.com/dictionary/dishonest (last visited October 17, 2018). Moreover, Ohio courts have defined "dishonesty" as involving a "disposition to lie" and have equated that term with "conscious wrongdoing . . . ." *See Schoenfield v. Navarre*, 843 N.E.2d 234, 239 (Ohio Ct. App. 2005) (citation and internal quotation marks omitted); *Carrisalez v. Erie Cty. Dep't of Human Servs.*, No. E-91-19, 1992 WL 43110, at *4 (Ohio Ct. App. Mar. 6, 1992) (citation omitted).

Accordingly, a "dishonest act" is synonymous with a "lie," and one cannot lie—i.e., "make an untrue statement with intent to deceive," *see Lie Definition*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/lie (last visited October 17, 2018)—without knowing the truth. *See Carrisalez*, 1992 WL 43110, at *4 (stating that "[d]ishonest[y] implies a willful perversion of truth in order to deceive . . . ." (citation omitted)).[6]

---

[5] The parties do not dispute that Ohio law governs the substantive issues presented in this case.

[6] Evanston insists that Ohio case law holds that a "dishonesty exclusion" in an insurance policy negates coverage for losses related to intentional acts. To support this definition, it cites several cases—including *Twin Maples Veterinary Hospital v. Cincinnati Insurance Co.*, 824 N.E.2d 1027, 1030 (Ohio Ct. App. 2005) and *Murrie v. Aiken Enterprises, Inc.*, No. L-96-324, 1997 WL 152056, at *1 (Ohio Ct. App. Mar. 31, 1997). These cases are inapposite. Though courts in *Twin Maples* and *Murrie* found that an insurance policy with a dishonesty exclusion only provided coverage for claims based on negligent conduct, it reached that conclusion because the policies at issue expressly limited coverage to losses based on negligent acts. *See Twin Maples*, 824 N.E.2d at 1031 (noting that policy said that insurer would only pay losses "caused by any negligent act");

### 2.      *None of the Unlawful Acts Contains an Element of Dishonesty*

We ask next whether the jury necessarily found that CSSA acted dishonestly when it committed the unlawful acts. The district court did not answer this question, but its resolution is necessary to the disposition of the case. To answer it, we must review the elements of the unlawful acts.

The jury did not have to find that CSSA acted dishonestly when it violated the ODTPA or when it committed defamation and commercial disparagement. Courts in Ohio analyze ODTPA claims in the same way that they analyze claims based on Section 43(a) of the Lanham Act, *see Cesare v. Work*, 520 N.E.2d 586, 590 (Ohio 1987), and a plaintiff need not prove intent or willfulness to establish a Lanham Act violation, *see, e.g.*, *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 647 (6th Cir. 1982) ("Under [Section] 43(a) of the Lanham Act it is not necessary to show that any false description or representation is willful or intentional." (citation omitted)). Further, per the jury instructions on the ODTPA claim, the jury had to decide whether CSSA "made one or more false . . . statements"—not whether CSSA published statements that it knew to be false. Similarly, the jury interrogatories do not show that the jury found that CSSA published statements that it knew to be false. Likewise, the jury could have held CSSA liable for defamation and disparagement by concluding that CSSA entertained serious doubts as to the truth of its statements. Thus, none of the unlawful substantive acts standing alone includes an element of dishonesty.

---

*Murrie*, 1997 WL 152056, at *4 (expressly excluding conduct "which is the result of willful . . . acts of the insured"). The Policy in this case contains no such limitation.

### 3. *Civil Conspiracy*

Because the jury did not find that CSSA acted dishonestly when it committed the unlawful acts, the issue becomes whether the jury's finding that CSSA committed each unlawful act in furtherance of a civil conspiracy necessarily means that CSSA acted dishonestly.

Under Ohio law, "[t]he tort of civil conspiracy is a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (citations and internal quotations omitted). Because civil conspiracy is a derivative tort, "[a]n underlying unlawful act"—such as commission of a common-law tort or violation of a statute—"is required before a civil conspiracy claim can succeed." *Id.* Further, "[t]he malice involved in the tort is that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Id.* (citations and internal quotation marks omitted).

The district court reasoned that, because the jury found "in favor of ClarkDietrich on its civil conspiracy claim, the jury necessarily determined that CSSA committed [the] unlawful acts 'intentionally'" and that, therefore, "CSSA's publication was *intentionally* false . . . ." The district court imputed the element of "intent" from the civil conspiracy claim onto the other unlawful acts. Because CSSA acted intentionally, the court reasoned, CSSA published statements that were intentionally false and therefore dishonest.

This analysis is flawed. As CSSA explains on appeal, because the jury instructions allowed the jury to find against CSSA on the civil conspiracy claim upon a finding that CSSA intentionally published false statements, the jury did not necessarily determine that CSSA published *intentionally* false statements. In other words, the jury could have found that CSSA intentionally *published* false statements rather than that CSSA published intentionally false statements.

A finding that CSSA intentionally published statements that happened to be false is not equivalent to a finding that CSSA acted dishonestly. Accordingly, the jury did not necessarily find that CSSA acted dishonestly.

### B. Evanston's Alternative Arguments

Evanston argues that even if the district court erred, it is entitled to summary judgment because: (1) the claims are uninsurable; (2) CSSA violated the Policy's cooperation clause; and (3) ClarkDietrich is estopped from collecting the limits of Evanston's insurance coverage because it argued during the state-court proceedings that CSSA is a "sham" organization.

### 1. *Uninsurable as a Matter of Policy*

Ohio law "prohibits liability insurance from covering damages caused by intentional" acts undertaken with intent to injure. *See, e.g.*, *Buckeye Union Ins. Co. v. New England Ins. Co.*, 720 N.E.2d 495, 499 (Ohio 1999) ("[A]n intent to injure . . . is a necessary element to uninsurability."); *see also Allstate Ins. Co. v. Campbell*, 942 N.E.2d 1090, 1095 (Ohio 2010).

Ordinarily, "[w]hether the insured had the necessary intent to cause injury is a question of fact," but the Ohio Supreme Court "has held that the intent to injure can be inferred as a matter of law" in some circumstances. *Buckeye Union*, 720 N.E.2d at 499 (citation omitted). Such circumstances arise "in cases in which the insured's intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm." *Campbell*, 942 N.E.2d at 1098. "[C]ourts should be careful to avoid applying the doctrine [of inferred intent] in cases where the insured's intentional act will not necessarily result in the harm caused by that act." *Id.*

A few inferred intent cases are illustrative. In *Buckeye Union*, the Ohio Supreme Court reasoned that an insurance company's bad faith and malicious denial of coverage does not constitute the type of intentional tort that is uninsurable under Ohio law. 720 N.E.2d at 499.

The court reasoned that the insurance company declined coverage pursuant to "what it believed were its rights under an insurance contract," not so as to injure the plaintiff. *Id.* On the other hand, intent to injure in Ohio can be inferred in civil cases involving criminal acts—such as murder or molestation—because, in those instances, the unlawful act (i.e., murder) necessarily causes the harm (death). *See, e.g.*, *Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115, 1120 (Ohio 1996); *Preferred Risk Ins. Co. v. Gill*, 507 N.E.2d 1118, 1124-25 (Ohio 1987).

ClarkDietrich's claims are insurable. The jury did not find that CSSA acted with intent to injure when it committed the unlawful acts, and no other evidence supports that proposition. Thus, the unlawful acts are insurable unless we infer that the acts involved intent to injure, *Buckeye Union*, 720 N.E.2d at 501 ("Since the jury did not specifically find that Buckeye acted with an intent to injure, Buckeye's bad-faith failure to settle the insurance claim was itself not necessarily an uninsurable act."), and we decline to make that inference. Like the insurance company in *Buckeye Union* that denied its insured's claim for coverage and was later found to have committed bad-faith insurance practices, CSSA published a statement that was later found to be false and tortious. *See id.* Therefore, as in *Buckeye Union*, Evanston's "attempt to make . . . malice equal intent to injure is misplaced . . . ." *Id.*

### 2. *Cooperation Clause*

Evanston argues that CSSA breached its cooperation obligation—and that it is therefore absolved from any obligation to indemnify CSSA on ClarkDietrich's claims—because CSSA "unilateral[ly] reject[ed] . . . ClarkDietrich's offer to dismiss all claims against the CSSA at no cost, without notice or consultation with Evanston . . . ." Evanston cites no evidence to support its contention that CSSA did not notify Evanston of ClarkDietrich's offer and ignores the evidence demonstrating that Evanston *was* made aware of the offer.

When an insurance policy requires an insured to cooperate with the insurer in investigating a claim, "the insurer may be relieved of further obligation with respect to [the] claim" if the insured fails to cooperate. *Gabor v. State Farm Mut. Auto. Ins. Co.*, 583 N.E.2d 1041, 1043 (1990) (citations omitted). "To constitute a defense to liability," however, "an insured's lack of cooperation must result in material and substantial prejudice to the insurance company." *Id.* (citations omitted). "Whether an insured has violated the cooperation clause . . . is a question to be determined in view of the facts and circumstances in each case." *Id.* (citations omitted). Though "the issue of whether there has been a violation" of a cooperation clause is typically a question for the factfinder, "[a] court may decide the cooperation clause issue as a matter of law . . . when a case presents undisputed facts." *Id.*

Here, the undisputed facts demonstrate that CSSA did not breach its duty to cooperate. The Policy defined CSSA's cooperation obligation as follows:

> Assistance and Cooperation of the Insured: The Insured shall give full assistance and cooperation to the Company [i.e., Evanston] as respects all claims made against the Insured at the Insured's expense. The Insured shall not, except at the Insured's own cost, make any payment, admit any liability settle any claims, assume any obligation or incur any expense without the written consent of the Company.

And the record demonstrates that CSSA notified Evanston of ClarkDietrich's offer to dismiss, to which Evanston responded: "I would think that would be hard to reject." Thus, CSSA did not reject ClarkDietrich's offer "without prior notice and/or consultation . . . ." Instead, CSSA complied with its cooperation obligation by informing Evanston of the offer, and, presumably because Evanston did not direct CSSA to accept it, rejected it.

### 3. *Judicial Estoppel*

Finally, Evanston argues that, because ClarkDietrich asserted that CSSA is a "sham" organization during state-court proceedings, it is estopped from now arguing a contrary position.

Evanston points out that ClarkDietrich: (1) argued in its closing arguments that "CSSA is just an entity" composed of individuals who worked together to mount an attack against ClarkDietrich, and (2) petitioned the state court to appoint a receiver for CSSA to prosecute a breach of fiduciary duty claim against CSSA's president, and, in doing so, argued that "the officers of [CSSA] used the organization as a pawn in an ill-fated attempt to advance their companies' competitive positions" and that "CSSA is a mere vehicle used by its officers and members to disparage ClarkDietrich . . . ."

"[T]he doctrine of judicial estoppel . . . preserve[s] judicial integrity by preventing parties from intentionally 'changing positions according to the exigencies of the moment.'" *Am. Guarantee & Liab. Ins. Co. v. Norfolk S. Ry. Co.*, 278 F. Supp. 3d 1025, 1048 (E.D. Tenn. 2017) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)); *see also Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982) ("The doctrine of judicial estoppel applies to a party who has successfully and unequivocally asserted a position in a prior proceeding; he is estopped from asserting an inconsistent position in a subsequent proceeding."). Courts consider several factors in determining whether the doctrine applies:

> First, a party's subsequent position must be "clearly inconsistent" with its earlier position. Second, the party's prior position was actually successful in persuading the prior court, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled." Finally, the party asserting the inconsistent position would obtain an unfair advantage over the opposing party if not estopped.

*Am. Guarantee & Liab. Ins. Co.*, 278 F. Supp. 3d at 1048 (citations omitted).

Evanston's judicial estoppel argument fails. Evanston has not explained how ClarkDietrich's assertions about CSSA contradict ClarkDietrich's arguments in the coverage litigation. Even if ClarkDietrich has taken inconsistent positions, Evanston's argument fails

because none of ClarkDietrich's causes of action in the state-court action required it to prove that CSSA operated as a sham organization. Thus, to the extent ClarkDietrich articulated that proposition in its closing argument, neither the jury nor the court had to accept it. Moreover, appointment of a receiver is warranted "where the failure to do so would place the petitioning party [i.e., ClarkDietrich] in danger of suffering an irreparable loss or injury." *See Sobieraj v. Gomersall*, No. 817708, 2003 WL 21954758, at *3 (Ohio Ct. App. Aug. 14, 2003). The court could have appointed a receiver to prosecute CSSA's claims without finding that CSSA is a sham organization.

IV.

Because the facts of this case are undisputed and all of Evanston's arguments fail as a matter of law, Evanston has not met its burden of proving that an exclusion absolves it from providing coverage. *See Cont'l Ins. Co.*, 415 N.E.2d at 317. Accordingly, the district court erred when it denied ClarkDietrich's motion and held that Evanston does not owe CSSA an indemnity obligation with respect to ClarkDietrich's ODTPA claim.

In light of that conclusion, we must now address the disposition of the case. Pursuant to 28 U.S.C. § 2106, we can "remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." Further, because "both sides have had an opportunity to present evidence, the facts are uncontroverted, and the proper disposition is clear, this court may direct the entry of summary judgment." *See Garner*, 8 F.3d at 366 (collecting cases). That said, we: (1) REVERSE the district court's order granting Evanston's motion for summary judgment, (2) REVERSE the district court's order denying ClarkDietrich's motion for partial summary judgment, (3) direct the

district court to grant ClarkDietrich's motion, and (4) REMAND to allow the district court to assess the extent of Evanston's indemnity obligation.

**REVERSED and REMANDED**.

**HELENE N. WHITE, Circuit Judge (concurring in part, dissenting in part).** This is a difficult case. There is no clear Ohio law on the application of the dishonest-acts exclusion to the coverage and claims at issue here. Nor is Ohio law clear on the consequences of our conclusion that the jury's interrogatory answers in ClarkDietrich's case against CSSA did not equate to a determination that the acts underlying the verdict on the ODTPA/unfair competition claim were dishonest within the meaning of the exclusion.

I agree with the majority that the jury's verdict does not conclusively establish Evanston's entitlement to deny coverage based on the dishonest-acts exclusion. I also agree that Evanston's other defenses—the uninsurability of the risk as a matter of public policy, and the failure to cooperate as required by the policy—fail for the reasons stated. However, I do not agree that the district court erred in denying ClarkDietrich's motion for summary judgment on its counterclaim.

Although I disagree with the district court's ultimate conclusion, I do not agree with the majority that the district court failed to answer the question whether CSSA acted dishonestly when it committed the unlawful acts. I read the district court's opinion as addressing that question:

> [T]he court concludes that regardless of whether ClarkDietrich's ODTPA, defamation, and disparagement claims individually fall within the Policy's coverage, a favorable jury verdict on the civil conspiracy claim dooms coverage under the Policy entirely. While the Court acknowledges Evanston bears the burden of proving CSSA's claim is excluded, the Court finds Evanston has met its burden, as CSSA's engagement in this particular civil conspiracy constitutes "dishonest" conduct.
>
> The Court's conclusion in this case, however, does not render all conduct related to civil conspiracies dishonest or deliberately fraudulent. Indeed, the Court can envision a scenario wherein a civil conspiracy verdict would not be excluded under the Policy. Accordingly, whether CSSA's conduct was dishonest necessitates a review of the unlawful acts the jury determined were part of the civil conspiracy.
>
> The jury identified the unlawful acts as follows: 1) Ohio Deceptive Trade Practices Act/Unfair Competition; 2) Defamation; 3) and Disparagement. In finding in favor of ClarkDietrich on the above claims, the jury made a number of

> findings by way of interrogatories. First, the jury determined that CSSA's publication was a false and misleading statement of fact. The jury also found that CSSA's publication was false. Moreover, the jury found CSSA published the publication with fault amounting to "actual malice." Next, the jury found CSSA made a false and disparaging comment by publishing the publication. Further still, the jury found CSSA disparaged ClarkDietrich with either knowledge of falsity or with reckless disregard of the truth or falsity of the publication. Finally, the jury found by publishing the publication that CSSA acted with intent to harm ClarkDietrich's interest or with knowledge that harm would inevitably result. The question then becomes whether a finding of civil conspiracy renders the above conduct dishonest.
>
> . . . .
>
> Applied to the facts herein, the Court finds the Policy exclusion includes CSSA's unlawful acts in furtherance of the civil conspiracy. While the jury was not required to find CSSA acted with intent in order to find in favor of ClarkDietrich on the ODTPA, defamation, or disparagement claims separately, the jury was required to find intent on the civil conspiracy claim. Imputing intent, then, the jury found CSSA's publication was *intentionally* false and a misleading statement of fact. Such conduct fits within the usual and ordinary meaning of dishonest.

R. 97, Op. & Order PID 1893-95.

The problem with the district court's ultimate conclusion is that the jury was not required to find that the acts that caused it to find liability and award damages under the individual counts were the same acts supporting its finding of liability and award of damages on the conspiracy count. Evanston is correct that the civil conspiracy count required a finding of underlying unlawful activity, and the jury identified conduct that violated each of the substantive claims—ODTPA/unfair competition, defamation, business disparagement—but the individual claims themselves, most clearly the ODTPA/unfair competition claim, included multiple individual allegations directed to separate statements in the publication. Additionally, as ClarkDietrich highlights, the civil-conspiracy count permitted the jury to consider additional publications not the subject of the three underlying claims. Thus, the jury's verdict did not necessarily embody a finding that the acts underlying the ODTPA/unfair competition claim were dishonest.

The majority concludes that a consequence of this determination is that Evanston is liable under the policy to provide coverage to CSSA for the verdict entered on the ODTPA/unfair competition count, and ClarkDietrich is entitled to judgment on its claim under Ohio Revised Code § 3929.06. Although Ohio law is not clear, I do not think it compels this result.

In *Howell v Richardson*, 544 N.E.2d 878, 881 (Ohio 1989), the Ohio Supreme Court explained that in an action brought under § 3929.06, collateral estoppel applies to bar the insurer from relitigating the insured's mental state if that mental state was determined in the underlying action. The Ohio courts appear to apply Ohio's general principles of collateral estoppel in § 3929.06 actions.[1] The question then is whether the prior action determined whether CSSA's acts were dishonest. As the majority observes, the jury's verdict did not equate to a finding of dishonesty. But it did not equate to a finding of no dishonesty either, and none of the specific findings are inconsistent with a finding of dishonesty. Because the jury's findings are consistent with both dishonesty and no dishonesty, the issue remains undecided and Evanston is not collaterally estopped from litigating the question in this coverage dispute.

Accordingly, I concur in the reversal of the grant of summary judgment to Evanston and dissent from the reversal of the denial of partial summary judgment to ClarkDietrich on its counterclaim.

---

[1]Under Ohio law,

> Collateral estoppel (issue preclusion) prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit. Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.

*Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994) (citing *Whitehead v. Gen. Tel. Co.*, 254 N.E.2d 10 (Ohio 1969) (syllabus ¶ 2)).